OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue presented by this appeal is whether defendants by regulation may limit Medicaid reimbursement for expenses incurred by eligible individuals during the three-month period preceding the application for Medicaid to only those services rendered by Medicaid-enrolled providers. We hold that such a State regulatory limitation is unsupported by the language or policy of the Federal statute. It is neither rational nor reasonable and is thus unenforceable. We also hold that the recipients may be reimbursed only at the Medicaid rate in existence at the time the service was rendered and may not be reimbursed for all out-of-pocket costs.
 

 Plaintiff Estelle Seittelman, as administrator of the estate of Ida Zichlinsky, commenced this combined declaratory judgment and CPLR article 78 proceeding against the Department of Social Services (DSS) and the Commissioner of the New York City Human Resources Administration challenging the Department’s refusal to reimburse Ms. Zichlinsky for monies expended for home care services she required during the three-month preapplication period. Pursuant to a promulgated regulation, DSS denied payment on the ground that Ms. Zichlinsky’s medical services were obtained from a non-Medicaid-enrolled provider. Three other individuals were allowed to intervene as plaintiffs. Sadye Bass and Leah Silverman sought reimbursement for private home care services, and Marguerite Holohan sought reimbursement for nursing care required after undergoing surgery. All asserted that the denial of payments and the regulation that authorized them were irrational.
 

 Before Supreme Court, plaintiffs moved to convert the action to a class action and for summary judgment declaring the regulation null and void. Defendants opposed the class certification and cross-moved for summary judgment. Supreme Court granted class-wide relief and held that the regulation at issue was irrational, inconsistent with Federal law and, thus, null and void
 
 (Seittelman v Sabol,
 
 158 Misc 2d 498, 502-507). The
 
 *623
 
 Appellate Division concurred that the regulation limiting retroactive reimbursement only to enrolled providers was irrational and that the State would be required to pay for those services rendered to eligible Medicaid recipients during the three-month preapplication period. However, it held that from the date of the actual application for Medicaid until the date when the Medicaid card was received, the State could limit reimbursement to expenses paid to enrolled providers “since, at the time of application, an applicant may be notified of the requirement that services be obtained from participating providers”
 
 (Seittelman v Sabol,
 
 217 AD2d 523, 525). This Court granted defendants leave to appeal.
 

 A.
 

 Medicaid, a program administered by both the Federal Government and the individual States, serves to provide medical assistance to those individuals “whose income and resources are insufficient to meet the costs of necessary medical expenses” (42 USC § 1396;
 
 Wilder v Virginia Hosp. Assn.,
 
 496 US 498, 502). In order to receive program funding from the Federal Government, New York’s Medicaid plan must conform with the Federal statutory standards
 
 (see, Matter of Dumbleton v Reed,
 
 40 NY2d 586, 587). The Medicaid law currently requires that each State plan:
 

 “provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application * * * for such assistance if such individual was * * * eligible for such assistance at the time such care and services were furnished” (42 USC § 1396a [a] [34];
 
 see also,
 
 42 CFR 435.914 [a]).
 

 Thus, pursuant to Federal law, New York must reimburse a Medicaid recipient for the cost of care and services received during the three months prior to the date on which the individual applied for Medicaid if that individual would have been eligible for Medicaid during those three months. This statutory directive was ostensibly adopted in New York in the form of a regulation, promulgated at 18 NYCRR 360-7.5 (a) (5). Entitled “Method of payment for medical care,” the regulation provides, in relevant part, that:
 

 
 *624
 
 “(a) Payment for medical care provided under the [Medicaid] program will be made to the person or institution supplying the care. However, payment for services or care may be made, at the [Medicaid] rate or fee in effect at the time such services or care were provided, to the following: * * *
 

 “(5) a recipient or his/her representative for paid medical bills for medical expenses incurred during the period beginning three months prior to the month of application for [Medicaid] and ending with the recipient’s receipt of his/her [Medicaid] identification card, provided that the recipient was eligible in the month in which the medical care and services were received
 
 and that the medical care and services were furnished by a provider enrolled in the [Medicaid]program”
 
 (emphasis added).
 

 It is the language highlighted above which forms the basis of the dispute currently before this Court. While the regulation provides the retroactive coverage envisioned and mandated by the Federal statute, it also limits that coverage by providing retroactive reimbursement only in those situations where “the medical care and services were furnished by a provider enrolled in the [Medicaid] program.”
 

 DSS proffers several arguments in support of the regulation’s validity. The agency asserts that it is rational to interpret the Federal statute to mean that the retroactive eligibility provisions do little more than extend Medicaid coverage in accordance with the basic requirements of the Medicaid program, including the requirement that only services rendered by Medicaid-enrolled providers are reimbursable. DSS relies on the phrase “medical assistance under the plan” found in the Federal statute (see, 42 USC § 1396a [a] [34]), arguing that such phrase plainly means medical assistance furnished by providers within the Medicaid program. Similarly, the phrase “care and services included under the plan” can only refer to care and services provided under the auspices of the Medicaid program. DSS also points to the Federal implementing regulation which directs that Medicaid eligibility be made retroactive to the beginning of the three-month preapplication period only if the individual “[r]eceived Medicaid services, at any time during that period, of a type covered under the plan”
 
 {see,
 
 42 CFR 435.914 [a] [1]). A “Medicaid service,” argues DSS, can only be one that is obtained from a Medicaid-enrolled provider.
 

 
 *625
 
 Next, DSS argues that the Federal provisions do not explicitly require a participating State to reimburse a Medicaid applicant for services provided by a non-Medicaid provider during the retroactive three-month preapplication period. In fact, asserts DSS, the Federal parity provision (42 USC § 1396a [a] [10] [B] [i]) mandates the rule articulated in the regulation because the regulation ensures that all Medicaid recipients receive care and services only from Medicaid-enrolled providers, whether those services are provided during the three-month preapplication period or during the regular eligibility period. Finally, DSS asserts that the State’s ability to assure high quality services without fraud or waste would be severely impaired if such reimbursements were allowed because non-Medicaid-enrolled providers are not subject to programmatic checks and audits and may even have been suspended or excluded from the Medicaid program because of fraudulent or abusive practices. For all these reasons, DSS requests that this Court uphold the regulation’s validity.
 

 It is settled law that an agency’s interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness
 
 (Matter of Howard v Wyman,
 
 28 NY2d 434, 438). However, where “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency”
 
 (Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459;
 
 Matter of New York Botanical Garden v Board of Stds. & Appeals,
 
 91 NY2d 413 [decided today]). In such a case, courts are “free to ascertain the proper interpretation from the statutory language and legislative intent”
 
 (Matter of Gruber [New York City Dept. of Personnel
 
 — Sweeney], 89 NY2d 225, 231-232;
 
 Matter of Dental Socy. v Carey,
 
 61 NY2d 330, 335 [“Whether administrative action violates applicable statutes and regulations is a question within the traditional competence of the courts to decide.”]). We hold that because the regulation in question is inconsistent with the controlling Federal statute it was intended to implement, it is unenforceable.
 

 We decline to adopt the State’s interpretation of the Federal statute. Had Congress intended to limit reimbursement only to Medicaid-enrolled providers, it could have done so, just as it clearly stated that only those services typically offered by Medicaid would be covered during the three-month preapplication period. DSS’s argument that the term “care and services included under the plan” as used by the statute encompasses
 
 *626
 
 “providers” is unpersuasive. The rule of statutory construction which states that words should be given their ordinary and usual meaning is relevant here
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 232). It is dubious at best to argue that “services included under the plan” refers to anything more than that — services covered by the Medicaid plan — and instead also encompasses or speaks to the providers rendering the service.
 

 The regulation implementing the statutory provision confirms this interpretation by explicitly providing that a State plan must “make eligibility for Medicaid effective no later than the third month before the month of application if the individual (1) [Received
 
 Medicaid services,
 
 at any time during that period,
 
 of a type covered under the
 
 plan”
 
 (see,
 
 42 CFR 435.914 [a] [1] [emphasis added]). Thus, the regulation clarifies that retroactive reimbursement will be provided for some services, such as home health care, but not for others, such as cosmetic surgery. The identity of the provider is not dispositive.
 

 Likewise, DSS’s argument that “it was not the intent of Congress to make every Medicaid recipient whole or to fashion a program that eliminates every conceivable claim of unfairness” should be rejected. While Medicaid may not serve to make every individual whole, it clearly was intended to reimburse those individuals for services provided under the Medicaid plan. DSS simply cannot escape the import of the words actually used in the statute.
 

 Additionally, the contested regulation adds a restriction to reimbursement for New York citizens that does not exist in any of the Federal statutes or regulations, and it narrows the scope of what is intended to be a remedial statute. As Supreme Court accurately noted, “Since participation in the Medicaid program requires that a State conform to Federal statutory and regulatory provisions, such a limitation on a Federal standard is improper”
 
 (Seittelman v Sabol, supra,
 
 158 Misc 2d, at 505 [citing
 
 Matter of Dental Socy. v Carey,
 
 61 NY2d 330, 335,
 
 supra; Matter ofDumbleton v Reed,
 
 40 NY2d 586, 587,
 
 supra]).
 
 Indeed, “[administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute”
 
 (Matter of Jones v Berman,
 
 37 NY2d 42, 53 [citations omitted]). The addition of a requirement, not found in the Federal statute, which effectively undermines the purposes of the Federal law, renders the regulation invalid.
 

 
 *627
 
 Similarly unavailing is DSS’s argument that retroactive reimbursement must be limited only to those individuals who utilized enrolled providers in order to safeguard against fraud and abuse. In many, if not most, cases the individual has already paid for the medical care needed and the reimbursement provided by the State through Medicaid goes directly to that individual. Thus, DSS has failed to adequately demonstrate that a denial of reimbursement to the Medicaid eligible individual would prevent fraud or abuse on the part of the provider.
 
 [1]
 

 Finally, the regulation frustrates the underlying purposes of the Federal statute. By limiting reimbursement for only those services rendered by a Medicaid-enrolled provider, the regulation “arbitrarily penalizes eligible claimants who obtained medical care from a non-Medicaid-enrolled provider before they had any reason to seek out Medicaid providers or had any reason to familiarize themselves with Medicaid regulations”
 
 (Seittelman v Sabol, supra,
 
 158 Misc 2d, at 503). Consequently, 18 NYCRR 360-7.5 (a) (5) is null and void to the extent that it limits reimbursement for expenses related only to care and services received from Medicaid-enrolled providers in the three-month preapplication period.
 
 [2]
 

 However, we agree with the Appellate Division that such a limitation may properly be imposed for the period commencing after the date of the actual application for Medicaid until the date when the Medicaid card was received since, at the time of application, the Medicaid applicant would be aware that any needed medical services should be obtained from an enrolled provider. This is also consistent with the language of the Federal statute which speaks to the provision of retroactive reimbursement for the three months prior to the month in which the application was made.
 

 B.
 

 We also hold that while plaintiffs are entitled to retroactive reimbursement, they may be reimbursed only at the
 
 *628
 
 Medicaid rate or fee in effect at the time the care or services were rendered and may not be reimbursed for out-of-pocket expenses
 
 (see,
 
 18 NYCRR 360-7.5 [a] [5]).
 
 [3]
 
 The intent of the retroactive reimbursement provision of the Federal statute is to provide financial assistance to those individuals who were unaware of their Medicaid eligibility. Nowhere in the statute is it required that, in this situation, the State make these individuals whole
 
 (see,
 
 42 USC § 1396d [a] [defining “medical assistance” as “payment of part or all” of the cost of certain medical care and services]). However, the legislative scheme does clearly contain a “parity provision” which requires that the medical assistance provided to any individual “shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual” (42 USC § 1396a [a] [10] [B] [i]). We conclude that retroactive reimbursement for out-of-pocket costs, rather than reimbursement at the Medicaid rate in existence at the time the services were rendered, would violate the above-referenced Federal parity provision.
 

 The crux of the parity provision is that all individuals eligible for Medicaid receive and be reimbursed for medical services at the same rate and level. If plaintiffs are reimbursed for out-of-pocket costs, the State will likely be required to pay more to applicants who received services from non-Medicaid-enrolled providers during the three-month preapplication period and who paid their bills, than to those who were treated by Medicaid-enrolled providers, since the latter would be entitled to reimbursement at no more than the Medicaid rate. Requiring the State to pay these out-of-pocket costs creates the very situation the parity provision was designed to avoid — the receipt by one class of Medicaid recipients of a greater amount of reimbursement dollars than another solely because some recipients visited a different group of providers. Such a rule would contribute to the creation of “two classes of Medicaid recipients” which we explicitly rejected in
 
 Matter of Krieger v Krauskopf
 
 (121 AD2d 448, 450,
 
 affd
 
 70 NY2d 637,
 
 supra).
 

 [4]
 

 
 *629
 
 It must also be recognized that the Medicaid system is premised upon the idea that the State and Federal governments will provide financial assistance to those in need but only within certain defined and accepted financial parameters. Reimbursement of Medicaid recipients’ out-of-pocket expenses, which may be considerably higher than the Medicaid rate negotiated or exacted from enrolled medical providers, would be inconsistent with this premise and, thus, could not have been within the legislative intent.
 

 It is true that reimbursement at the Medicaid rate may visit hardship upon some recipients. However, the Medicaid system, like all public benefit programs, represents a balancing of costs and benefits. Both the financial integrity of the Medicaid system and the needs of individual recipients must be addressed. Our holding on this issue gives effect to the balance that Congress has struck.
 

 Finally, we vacate that part of Supreme Court’s order which delineates the manner and time frame in which the agencies must compensate the plaintiff class. Before formulating the order for disposition, the trial court should have the opportunity to review additional submissions by both parties containing concrete proposals and time lines for retroactive reimbursement, thereby greatly minimizing any foreseeable administrative difficulties.
 

 The judgment appealed from and the order of the Appellate Division brought up for review should be modified, without costs, and the case remitted to Supreme Court for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review modified, etc.
 

 [1]
 

 . We also note that existing law provides that Medicaid administrators may withhold payment or reimbursement if they discover fraud or collusion between providers and recipients with regard to any transaction (see, 18 NYCRR 515.5 [b]) and if payment has already been made, DSS may impose sanctions or monetary penalties (see, 18 NYCRR parts 515, 516).
 

 [2]
 

 . In light of this holding and analysis, we deem it unnecessary to address the argument that the regulation also conflicts with our decision in
 
 Matter of Krieger v Krauskopf
 
 (70 NY2d 637,
 
 cert denied sub nom. Perales v Krieger,
 
 484 US 1019).
 

 [3]
 

 . This issue is preserved. The record demonstrates that the sworn “Affidavit in Support of State Respondent” by Jane McCloskey, which accompanied defendants’ verified answer, explicitly addresses the issue presented and states defendants’ position that reimbursement at the Medicaid rate is required (see, Record on Appeal, at 206-210 [paras 9, 13, 18]). Thus, sufficient notice of the issue was given.
 

 [4]
 

 . Plaintiffs’ reliance on
 
 Greenstein v Bane
 
 (833 F Supp 1054 [SD NY 1993]) is misplaced. The issue before the Federal court was whether out-of-pocket reimbursement was appropriate where agency error had, in the first
 
 *629
 
 instance, precluded the otherwise eligible Medicaid applicant from receiving medical assistance. First, no agency error is implicated or exists in this case. Second, different statutory provisions and policies govern the resolution of the issues presented. The cases are clearly distinguishable.