*568 OPINION OF THE COURT
O. Peter Sherwood, J.
Plaintiffs Yetta Kurland, Jo Anne Simon, Mel Gagrin and Dan Jacoby (plaintiffs) commenced this action for declaratory and injunctive relief pursuant to CPLR 3001 and article 63. This case brings up for review New York City Campaign Finance Board Advisory Opinion No. 2008-7 (AO) issued by defendant New York City Campaign Finance Board (the CFB) following the enactment, on November 3, 2008, of Local Law No. 51 (2008) of the City of New York which extended term limits from the current two terms to three for current elected officials and allowed such officials to run for their incumbent seats in the 2009 general election. The AO was issued by the CFB to address the extraordinary impact of Local Law No. 51 on prospective candidates with reported activity in anticipation of seeking election to a higher office, who will now seek reelection to their incumbent office, and to enhance the possibility that such candidates will participate in the New York City Finance Program (the Program). The question before this court is whether the AO violates the New York City Campaign Finance Act (the Act) (Administrative Code of City of NY § 3-701 et seq.).
The complaint seeks in its first cause of action a declaration that the CFB’s AO violates the Act. In the second cause of action, the plaintiffs essentially seek to enjoin the CFB from implementing the terms of the AO by restraining the CFB from exempting expenditures made by a candidate in furtherance of a campaign for any municipal office from 2006-2008.
The CFB cross-moves for an order pursuant to CPLR 2215 and 3211 (a) (7) dismissing the complaint for failure to state a cause of action.
The court has reviewed and considered the following papers: the order to show cause, the affirmation of Leo Glickman, Esq., plaintiffs’ attorney, dated December 2, 2008, with exhibits A and B, the notice of cross motion, dated December 15, 2008, the affidavit of Amy M. Loprest, CFB’s executive director, sworn to on December 15, 2008, with exhibits A through F, defendant’s memorandum of law in opposition to the order to show cause and in support of the cross motion to dismiss, and plaintiffs’ reply memorandum of law in further support of the order to show cause. The court also heard oral argument on the plaintiffs’ application and the defendant’s cross motion. Following oral argument, the court reserved decision. Upon due *569 consideration of the moving and cross-moving papers and the parties’ arguments both on the papers and orally made to the court, the defendant CFB’s cross motion to dismiss the complaint is granted, the complaint is dismissed and the plaintiffs’ motion for declaratory and injunctive relief is denied.
The Act provides for and governs the voluntary system for candidates running for any of five covered offices, namely, mayor, comptroller, public advocate, borough president and city council member, to receive matching taxpayer funds in exchange for their agreement to abide by rules limiting fundraising and campaign expenditures. The Act, together with New York City Charter chapter 46, created the CFB as an independent agency charged with administering the Program (Administrative Code § 3-708; Charter § 1052). The Act and the Rules of the Campaign Finance Board (the rules) (52 RCNY), promulgated by the CFB pursuant to section 3-708 of the Act and section 1052 of the Charter, govern each candidate’s eligibility for public funds, the auditing of each candidate’s financial activity to ensure compliance with the Act and rules, and disbursement of public funds. The primary purpose of the Program is to make candidates for municipal elective office less dependent on large contributions and to enable grassroots candidates to mount competitive campaigns. In this regard, the CFB seeks to maximize participation in the Program because all participating candidates must adhere to the same spending limits thereby creating a more level playing field for all candidates in an election.
All participants in the Program are subject to the Act’s spending limits which for purposes of this proceeding fall into three categories: the limit for the three years prior to the year of the election, the primary limit and the general election limit. The limit for city council candidates is $43,000 for the three calendar years preceding the election for which the candidate is certified as a participant in the Program, whereas the expenditure limit for the higher offices ranges from $129,000 to $290,000 (see Administrative Code § 3-706 [2]). City council candidates are limited to $161,000 for the primary election, and then again for the general election, whereas the expenditure limits for the primary and general election for higher covered offices range from $1,386,000 to $6,158,000 (see Administrative Code § 3-706 [1] [a]).
The extension of term limits caused by the enactment of Local Law No. 51 created a dilemma for participating city council *570 members who had been running for higher office, but who wanted to change course and run for their incumbent office pursuant to Local Law No. 51. In the AO the CFB described the issue before it as follows:
“As a result of [Local Law No. 51], many candidates may no longer choose to run in the 2009 election or may choose to run for a different office than that for which they have been raising and spending money. The biggest challenge is that the Board’s rules presume that all contributions and spending are for a candidate’s next election. At this late point in the election cycle, a substantial number of candidates have received many contributions at a higher limit than will apply if they run for a ‘lower office.’ More importantly, many candidates have spent well over the total expenditure limits for the ‘lower office.’ ”
The CFB then proceeded to provide candidates with guidance on how to rebut the presumptions found in the rules in the unique circumstances before it and to permit the affected candidates to participate in the Program for the 2009 election even though they may have already raised or spent more than the expenditure limit for the lower office. In issuing the AO, the CFB believed that the options created thereby would ensure the fairest and most competitive elections for the 2009 election cycle for both incumbents and challengers alike. The AO is an attempt by the CFB to make it practical for all candidates who wish to join the Program to do so. It addresses two groups of candidates — candidates who anticipated seeking higher office who will now seek reelection to their incumbent office in 2009 (group 1 candidates) and candidates with reported activity who will now not run in the 2009 election, but will seek office in 2013 (group 2 candidates).
The CFB through the AO interpreted its rules to allow group 1 candidates to: (1) freeze their current committee until the 2013 election cycle and restart with a new committee for the 2009 election cycle; or (2) use their current committee to run for reelection to their incumbent office in the 2009 election, return all over-the-limit contributions, and allocate all expenditures incurred prior to November 3, 2008 between the aborted 2009 campaign and the 2009 reelection campaign. In order to take advantage of one of these two options, candidates must show that they had been seeking a higher office.
*571 The CFB also interpreted its rules to allow group 2 candidates to keep the committee formed for the 2009 election cycle and use it instead for the 2013 election. All expenditures incurred prior to January 12, 2010, except those associated with fund-raising, will not count toward the 2013 election. Costs associated with raising those funds will count towards the spending limit for the 2013 election with a 15% flat rate assessed on the total amount of funds in the committee on January 11, 2010.
In both its moving papers and at oral argument, plaintiffs commended the CFB for attempting to encourage as many candidates as possible to join the Program, but contended that its mechanism for doing so was faulty. Plaintiffs claim that the AO suspends the portions of the Act that are intended to level the playing field between candidates. According to plaintiffs’ argument, the AO is not in harmony with, but rather is contrary to the Act and rules and has the effect of amending the Act. Specifically, plaintiffs argue that the Act addresses when expenditures for one office count toward the expenditure limit for a different office and which expenditures are exempt from the limits, and clearly provides that all nonexempt expenditures for municipal races must count toward the participating candidate’s limit for the municipal race for which the candidate ultimately decides to run. They further argue that the provision of the AO permitting a candidate to freeze his or her committee and start fresh violates a 2003 amendment to the Act which prohibits a participating candidate from using an entity other than the designated committee to aid in the election covered by the candidate’s certification. Plaintiffs assert that the AO places nonincumbent challengers at a disadvantage by permitting incumbents to escape the effects of the expenditure limits during the first three years of the election cycle when challengers do not share the same advantage. Plaintiffs aver that if the CFB believes that the Act does not properly accommodate the circumstances created by the term limits expansion law, it should recommend to the City Council that it amend the Act rather than unlawfully amending the Act itself by its AO. On the basis of these arguments, plaintiffs seek a declaration that the CFB’s AO violates the Act and is invalid and to enjoin the CFB from implementing the terms of the AO.
The CFB opposes the plaintiffs’ application and cross-moves to dismiss the complaint for failure to state a cause of action. Not surprisingly, the CFB avers that the AO is consistent with the Act and rules and does not change the spending limits *572 provided therein. According to the CFB, the AO is a proper interpretation of the Act under the broad provision therein empowering the CFB to take actions “necessary and proper to carry out the purposes of [the Act]” (Administrative Code § 3-708). The CFB states that the AO simply allows candidates who can show that they were originally running for higher office with the option to not have certain expenditures applied toward the 2009 spending limits for reelection to the lower office. The CFB maintains that if it had not acted by issuing the AO, most of the candidates running for their incumbent positions would not be able to join the Program given the significant difference between the spending limits for the higher office as compared to that for the lower office. Thus, the incumbents would be unencumbered by any spending limits and have an unfair advantage over any challengers. The CFB believes that, contrary to the plaintiffs’ position, the AO places challengers in a far more competitive position than if the CFB took no action and both falls within its mandate and effectuates the Act’s purpose of preserving a level playing field without either penalizing or creating an advantage for some candidates as a result of the legislation expanding term limits.*
Discussion
The starting point for the court’s discussion is the well settled principle that an agency’s interpretation of the statutes and regulations it is responsible for administering is entitled to great deference, and must be upheld if not irrational or unreasonable (see e.g. Seittelman v Sabol, 91 NY2d 618, 625 [1998]; Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 429 [1st Dept 2007]; New York City Campaign Fin. Bd. v Ortiz, 38 AD3d 75, 80-81 [1st Dept 2006]). Juxtaposed against this principle is the equally well established principle that where the question is one of pure statutory construction “ ‘dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight’ ” (Matter of KSLM *573 Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303, 312 [2005], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). In such cases, judicial review is less restrictive and the courts are “free to ascertain the proper interpretation from the statutory language and legislative intent” (Seittelman v Sabol, 91 NY2d at 625). Agency determinations which completely conflict with the clear wording of a statutory provision are not to be upheld (see Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 103 [1997]). Stated differently, an agency, however laudable its intentions, is not permitted to legislate by interpreting a statute in a manner which is at variance or inconsistent with the express language of the statute.
The Act sets forth the expenditure limits applicable to all candidates who participate in the Program. As described above, the limits vary depending on the office the candidate is seeking. A participating candidate seeking the office of public advocate or comptroller is subject to an expenditure limit of $3,850,000 in each primary and in each general election (see Administrative Code § 3-706 [1] [a]). The expenditure limit for member of the city council is $161,000 in each primary and in each general election. (Id.) The Act does not indicate which limit shall apply if a participant raises and spends funds for the office of comptroller and thereafter elects to seek election to a city council seat. The Act does not mention presumptions as to spending or contribution limits and, clearly, does not address every situation covered by the presumptions contained in the rules, to wit, that expenditures and contributions are presumed to be for the next election following such expenditure or contribution. Rather, the Act is confined to setting such spending and contribution limits and detailing the manner in which such campaign expenditures and fundraising efforts are calculated. Thus, it is left to the CFB to interpret the Act’s provisions in a manner consistent with its mandate to govern public financing of campaigns and the Act’s purpose to level the playing field. CFB rule 1-08 (c) (1) states that “[a]n expenditure is presumed to be made for the first election (in which the participant, limited participant or non-participant is a candidate) following the day it is made.” Similar presumptions are contained in rules 1-04 (f) (“a contribution is presumed to be accepted for the first election in which the participant, limited participant, or non-participant is a candidate following the day that it is received”) and 7-03 (c) (“The Board will presume that contribu *574 tions and loans are accepted, disbursements are made, and liabilities are incurred by a candidate for his or her next following election”). These rules have been applied by the CFB repeatedly to apply the expenditure limits contained in the Act to candidates who mount campaigns for higher office and thereafter opt to seek reelection to their current office (see e.g. NY City Campaign Fin Bd Advisory Op Nos. 1993-7, 1997-6). In each case, the CFB exercised its authority in interpreting the provisions of the Act by reviewing the various expenditures and contributions and determining which should be counted against the contributions and expenditure limits for each office.
Indeed, plaintiffs’ attorney acknowledged at oral argument that the AO may be consistent with the CFB’s rules, and essentially conceded that the CFB acted within its authority in establishing the presumptions set forth in rules 1-08 (c), 1-04 (f) and 7-03 (c). Not surprisingly, plaintiffs have not identified any specific language in the Act that is inconsistent with the rules.
The provisions of the Act concerning campaign expenditures are not absolute. The Act allows for the implementing regulations and interpretive opinions promulgated by the CFB. The presumptions concerning contributions and expenditures, and the advisory opinions regarding how these presumptions may be rebutted, fall within the category of statutory interpretation involving a special knowledge and understanding of the underlying operational practices of the CFB and also entail an evaluation of the inferences to be drawn therefrom. It remains therefore for the court to decide whether the CFB’s interpretation of the relevant provisions of the Act is irrational or unreasonable.
The court finds that the AO is consistent with the Act. It is neither unreasonable or irrational. As the CFB asserts, the AO does not change the spending limits set forth in the Act nor does it overrule or amend such statutory provisions. Rather, it provides guidance to prospective candidates and a mechanism for rebutting the presumptions contained in the CFB’s rules that contributions and expenditures are for the next election. The approach taken by the CFB is entirely consistent with the purposes of the Act to encourage all candidates to participate in the Program and provide a level playing field by limiting contributions and restricting expenditures. Indeed, rather than creating a disadvantage for challengers as compared to incumbents, the AO places challengers in a much more competitive position. Incumbents who were running for higher office prior *575 to the extension of term limits presumably had already raised substantial war chests in anticipation of the races for those higher offices. If deprived of the options contained in the AO, these candidates would be excluded from participation in the Program and would be free to spend sums far exceeding the limits imposed on candidates who participate in the Program thereby defeating the goals of the Act. Any benefit which an incumbent running for reelection, who had previously expected to run for higher office, might receive from the options made available by the AO do not match the negative effects of having the incumbent run for reelection with no limit whatsoever on his or her campaign expenditures. Reduced to its simplest terms, the provisions of the AO effectuate the goals and purposes of the Act, namely, to ensure competitive elections. To hold otherwise would be to eviscerate the powers the Act granted to the CFB to administer the Program. Advisory Opinion No. 2008-7 and its interpretation of the Act effectuate the purposes of the Act. The record does not support plaintiffs’ claim that the CFB through the AO improperly legislated by amending the Act. The AO does not add provisions to the Act that are not there. Rather the AO interprets the language of the Act in order to give effect to purposes of the Act.
Given the court’s determination, so much of plaintiffs’ action as seeks injunctive relief may be summarily denied because it is clear that plaintiffs will be unable to meet the requisite tripartite test for the grant of preliminary injunctive relief. The elements which must be demonstrated to be entitled to a preliminary injunction are well settled, namely, (1) a likelihood of success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) a balancing of equities in the movant’s favor (see e.g. Doe v Axelrod, 73 NY2d 748 [1988]). As noted, the AO was a proper exercise of the CFB’s authority to interpret the Act. Therefore, plaintiffs have not demonstrated a likelihood of success on the merits of their claims. Furthermore, the AO does not place challengers at a disadvantage as compared with incumbents, but rather preserves the purpose of the Act to level the playing field in elections for the designated municipal offices. Thus, it may not be said that any of the plaintiffs will suffer irreparable injury absent the injunctive relief they seek. Lastly, the equities balance in favor of the defendant in that the AO is a reasonable interpretation of the Act and a rational response to the unique situation created by Local Law No. 51.
*576 Accordingly, it is ordered that the plaintiffs’ motion by order to show cause for a declaratory judgment and a preliminary injunction is denied; and it is further ordered that the defendant’s cross motion pursuant to CPLR 3211 (a) (7) to dismiss the action for failure to state a cause of action is granted and the complaint is hereby dismissed.

 The CFB argued in support of its cross motion that, with the exception of plaintiff Kurland, plaintiffs lacked standing to bring the instant lawsuit. However, at oral argument the CFB’s attorney set aside this issue and focused upon the defendant’s substantive arguments in favor of a determination as to the lawfulness of the AO. Therefore, the court will not address the issue of standing in this decision.