■ ASSOCIATED MUTUAL INSURANCE COOPERATIVE, Respondent, v 198, LLC, Appellant, et al., Defendants. [914 NYS2d 7]—

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered on or about June 5, 2009, which, inter alia, denied defendant's motion for summary judgment dismissing the complaint, affirmed, with costs.

As an adjacent landowner, defendant owed plaintiff's insured "a duty to exercise reasonable care in the maintenance of its property to prevent foreseeable injury that might occur on the adjoining property" (*Brown v Long Is. R.R. Co.*, 32 AD3d 813 [2006]). In light of the long history of criminal activity on the premises and defendant's awareness of that activity, whether the damage that occurred to the insured's premises as a result of a fire was foreseeable, and whether the measures defendant took to secure its vacant building were reasonable either under Administrative Code of City of NY former § 26-235* or the common law, are questions of fact warranting the denial of summary judgment.

We do not agree with the limitation on liability that the concurrence's reading of section 26-235 of the Administrative Code would impose. The concurrence interprets this provision as requiring the issuance of an administrative order as a precondition to a finding of a statutory violation. However, the statute nowhere provides that the issuance of a sealing or other order is a prerequisite for liability to attach, or that in the absence of an order a landowner is excused from compliance with the statute. Rather, it simply states, "A vacant building which is not continuously guarded shall have all openings sealed in a manner approved by the commissioner, and it shall be the duty of the owner thereof promptly to make any repairs that may be necessary for the purpose of keeping such building

---

* Chapter 1 of title 26 has since been repealed, effective July 1, 2008, and superseded by new provisions.

sealed. Any vacant building not continuously guarded or not sealed and kept secure against unauthorized entry as hereinbefore provided shall be deemed dangerous and unsafe as a fire hazard and dangerous and detrimental to human life, health and morals within the meaning of this article."

The concurrence relies not on the plain words of section 26-235, but rather, on a rule promulgated by the Department of Buildings, to argue that the agency intended a sealing order to be a precondition to liability. The rule, 1 RCNY 3-01, states that "[w]here buildings are vacant, unguarded, open to unauthorized entry *and are required to be sealed pursuant to the provisions of an unsafe building order*" (emphasis added), such buildings must be secured in the manner provided in the rule. The rule, by its clear terms, pertains only to those situations in which a sealing order has been issued, which is not the case here.

The concurrence argues that this rule reflects an agency policy that a sealing order is a prerequisite to liability. Since the rule is on its face inapplicable, it is unnecessary to address this argument. We simply note that the rule, like section 26-235 itself, nowhere provides that a sealing order is a prerequisite to statutory liability. Assuming, arguendo, that this rule reflects an agency policy that a sealing order is necessary before statutory liability may be found, this Court, under settled law, would not be required to defer to agency policy concerning a statute the meaning of which is plain. "[W]here the question is one of pure statutory reading and analysis, . . . there is little basis to rely on any special competence or expertise of the administrative agency," and "courts are free to ascertain the proper interpretation from the statutory language and legislative intent" (*see Matter of Smith v Donovan*, 61 AD3d 505, 508-509 [2009] [internal quotation marks and citations omitted], *lv denied* 13 NY3d 712 [2009]; *see also Seittelman v Sabol*, 91 NY2d 618, 625 [1998] [holding state regulation, which limited Medicaid reimbursement for period preceding Medicaid application to only those services rendered by Medicaid-enrolled providers, unenforceable since it was unsupported by the language and the policy of the controlling federal statute it was intended to implement]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451 [1980] [disregarding regulation of Superintendent of Insurance, limiting recovery for lost earnings to $800 per month, where it conflicted with clear wording of the relevant provisions of the Insurance Law]).

The meaning of section 26-235 of the Administrative Code is patent. The statute nowhere provides that a sealing order is a

prerequisite to liability, and we reject any attempt to graft an addendum onto the statute, in violation of the plain meaning doctrine.

We decline to engage in the layers of speculative discourse the concurrence's position requires about hypothetical fact patterns that are not before us. Suffice to say we disagree, based on the words of section 26-235 itself, and will not engage in further unnecessary rejoinder.

We have considered defendant's remaining arguments and find them unavailing. Concur—Renwick, Richter and Manzanet-Daniels, JJ.

Friedman, J.P., and McGuire, J., concur in a separate memorandum by McGuire, J., as follows: I agree with defendant-appellant's contention that liability cannot be predicated on a violation of former section 26-235 of the Administrative Code of the City of New York because the obligation to seal a vacant building in a manner approved by the Commissioner is not triggered simply by a building being vacant and not continuously guarded. Plaintiff's position that the issuance of an administrative order is not a necessary condition to this obligation is contradicted by the plain language of 1 RCNY 3-01. This rule, promulgated by the Department of Buildings, the agency responsible for enforcing section 26-235, states that "[w]here buildings are vacant, unguarded, open to unauthorized entry *and* are required to be sealed pursuant to the provisions of an unsafe building order issued by the Department of Buildings . . . , they shall be sealed and protected in the following manner" (emphasis added).[1]

Moreover, section 26-235 does not address subjects it is reasonable to conclude it would address—such as the length of time a building must be vacant before it must be sealed and whether a building that is vacant because it is newly constructed must be sealed—if the obligation to seal were triggered simply by a building being vacant and not continuously guarded. In this regard, I note that section 26-235 does not distinguish between commercial and residential buildings. Suppose the occupants of a residential building are away on vacation for two weeks, a month or six weeks. Is the building a vacant one that the owner must seal in a manner approved by the Commissioner even absent an order or any notice from the Commissioner? It may be conceivable that the City Council left building owners to guess at the answers to such questions, but it is not

---

1. The original version of 1 RCNY 3-01, promulgated in July 1991, is not materially different from the current version.

reasonable so to conclude (*see Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982] [notwithstanding literal terms of a statute, "(i)t is . . . always presumed that no . . . unreasonable result was intended and the statute must be construed consonant with that presumption"]).

Further and compelling support for defendant's reading of section 26-235 is provided by its opening sentence, which states: "Any structure or part of a structure or premises that from any cause may at any time become dangerous or unsafe, structurally or as a fire hazard, or dangerous or detrimental to human life, health or morals, shall be taken down and removed or made safe and secure." If the command of the second sentence ("A vacant building which is not continuously guarded shall have all openings sealed in a manner approved by the commissioner") can be violated in the absence of any administrative order or notice, it must be that the command of the first sentence also is violated in the absence of any such order or notice. After all, nothing in the statutory text would allow the conclusion that an order or notice is required for a violation of one but not the other sentence. Thus, under the reading of section 26-235 urged by plaintiff and adopted by the majority, if any building thus becomes "dangerous or unsafe" or "dangerous or detrimental to human life, health or morals," the owner is in violation despite the sweeping and thus uncertain scope of these terms. Nor would it matter a whit under the majority's reading of section 26-235 if the owner has no knowledge at all of the condition or circumstance rendering the building "dangerous or unsafe" or "dangerous and detrimental." For all these reasons, the majority's reading of the statute is manifestly unreasonable (*see Zappone v Home Ins. Co., supra*).

Defendant's interpretation of section 26-235 is supported as well by its companion provisions in former articles 8 and 9 of subchapter 3 of chapter 1 of title 26 of the Administrative Code. Former section 26-236 (a) mandates that the owner of a building that is unsafe or dangerous (such as a building that is vacant within the meaning of section 26-235) be served with a notice and "an order requiring [that] such structure or premises . . . be made safe and secure"; former section 26-236 (b) specifies the manner in which the order and notice are to be served; and former article 9 provides for judicial enforcement, at the behest of the Corporation Counsel, of orders issued under former subchapter 3. Suffice it to say, nothing in these provisions sug-

gests that a violation of section 26-235 occurs in the absence of a failure to comply with a notice or order.[2]

Considerable deference is due to the interpretation of section 26-235 by the Department of Buildings that is reflected in 1 RCNY 3-01. Section 26-235 is part of a comprehensive scheme, subchapter 3, "Building Construction," that entrusts to the Department of Buildings a host of responsibilities relating to technical and other matters within its expertise (*see Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980] ["Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices . . . , the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute"]). Deference is all the more appropriate given that the terms of section 26-235 do not purport to be alone sufficient to create a statutory obligation, let alone to define a violation, but instead expressly condition the obligation on an action by the Department of Buildings that requires its expertise. Because the evident interpretation of section 26-235 by the Department of Buildings is consistent with its text, we should defer to it (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539, 545 [1984] ["Interpretation given a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute"]).

Of course, defendant's reading of section 26-235 does not permit landowners to escape liability for fire hazards and dangerous conditions on their property whenever a formal sealing order has not been issued. Rather, landowners will remain liable if they breach their common-law duty. Indeed, as discussed below, I would affirm the denial of defendant's motion for summary judgment precisely because material issues of fact exist as to whether it breached that common-law duty.

The majority defends its position with little more than bare assertions about the statute's meaning. Perhaps the most striking feature of the majority's memorandum is that it has no response at all to the points I make about the oddities (at best) inherent in its position. Thus, it makes no attempt to explain how it can be reasonable to construe the statute to be violated

---

**2.** Construing section 26-235 to be violated in the absence of a notice or order would undercut former section 26-237, which grants to owners a period of time in which "to commence the abatement of the unsafe, dangerous or detrimental condition" if they, after being served with a notice, certify their assent to the notice.

when, *eo instante*, a building becomes, by someone's lights, "dangerous or unsafe" or "dangerous or detrimental to human life, health or merits." Nor does the majority make any attempt to explain how it can be reasonable to conclude that the City Council left owners of residential as well as commercial buildings to guess whether the statute is violated if a building is left vacant for two weeks, a month or six weeks. Far from engaging in a reasoned debate, the majority simply characterizes my arguments as "speculative discourse" to which no "rejoinder" is necessary.

With respect to 1 RCNY 3-01, the majority asserts that it, "by its clear terms, pertains only to those situations in which a sealing order has been issued." Of course, the rule does not state *in haec verba* that issuance of a sealing order is a prerequisite to liability. But that is the clear import of the rule. Obviously, section 26-235 cannot be violated unless a building is not "sealed in a manner approved by the commissioner." And under the rule, a building need not be "sealed and protected" in the "manner" prescribed by the Commissioner unless it is "required to be sealed pursuant to the provisions of an unsafe building order" (1 RCNY 3-01). On this point, too, the majority has no substantive response. Finally, because it is wrong in asserting that "by its clear terms" the rule is "inapplicable," it also is wrong on the question of whether the agency's interpretation of the rule is a reasonable one to which we should defer.

As noted above, I nonetheless agree that Supreme Court properly denied defendant's motion for summary judgment. As an adjacent landowner, defendant owed plaintiff's insured a common-law "duty to exercise reasonable care in the maintenance of its property to prevent foreseeable injury that might occur on the adjoining property" (*Brown v Long Is. R.R. Co.*, 32 AD3d 813 [2006]). In light of the long history of criminal activity on the premises and defendant's awareness of that activity, whether the damage that occurred to the insured premises as a result of the fire was foreseeable, and whether the measures defendant took to secure its vacant building were reasonable, are questions of fact warranting the denial of summary judgment (*see e.g. New York Cent. Mut. Fire Ins. Co. v City of Albany*, 247 AD2d 815 [1998]).