OPINION OF THE COURT
George A. Grasso, J.
Defendant is charged with two counts of criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1] [a class A misdemeanor]). The accusatory instrument alleges that defendant, along with his codefendant, possessed two loaded 9 millimeter firearms. The firearms were allegedly found inside defendant’s home. It is further alleged that defendant failed to apply for a license to legally possess the firearms at issue. Defendant now moves to dismiss the accusatory instrument on the ground that Penal Law § 265.01 (1) violates the Second Amendment of the United States Constitution. Defendant’s motion is made pursuant to CPL 210.25 (3), a statute that is applicable to the dismissal of indictments on constitutional grounds. Notwithstanding, this court will treat defendant’s motion to dismiss as if it was made pursuant to CPL 170.35 (1) (c), the statute that is applicable to the dismissal of misdemeanor accusatory instruments on constitutional grounds.
Defendant’s argument is threefold. First, defendant argues that in District of Columbia v Heller (554 US 570 [2008]), the Supreme Court held that a local statute that banned handguns kept in the home for immediate use and self-defense violated the Second Amendment of the United States Constitution. Second, defendant contends that the holding in Heller was made applicable to the states based on the Court’s recent decision in McDonald v Chicago (561 US —, 130 S Ct 3020 [2010]). Finally, it is defendant’s position that New York State’s licensing scheme, under Penal Law § 400.00 (6) and 38 RCNY chapter 5, is arbitrary and capricious and therefore, violates the Second Amendment.
In their response, the People argue, in reliance on Prayze FM v Federal Communications Commn. (214 F3d 245 [2000]), that defendant, having failed to apply for a firearm license, consequently has no standing to challenge the constitutionality of Penal Law § 265.01. This court finds that the rationale in *598 Prayze is not applicable to the instant matter. The controversy in Prayze, upon which the issue of standing is raised, involves regulatory litigation between a corporate radio station and the Federal Communications Commission. Here, the defendant is charged in a criminal action under a specific statute, to wit, Penal Law § 265.01. In this court’s view, under circumstances where a defendant in a criminal case challenges the constitutionality of a statute as part of his defense, an inherent standing is triggered to review the constitutionality of the statute that defendant is charged under. Thus, this court finds that the criminally charged defendant has standing to challenge the constitutionality of the statute under which he is charged. (People v Stuart, 100 NY2d 412 [2003]; see People v Taylor, 9 NY3d 129 [2007].)
This court rejects, as being without merit, defendant’s argument that Penal Law § 265.01 violates the Second Amendment of the United States Constitution. The Court stated in Heller,
“Like most rights, the right secured by the Second Amendment is not unlimited . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.” (554 US at 626-627.)
The Court made clear that its list of “presumptively lawful regulatory measures” contains only examples and is not exhaustive. {Id. at 627 n 26.)
Notwithstanding the Supreme Court having made the holding of Heller applicable to the states by virtue of its decision in McDonald, the instant case must result in a manner that upholds the constitutionality of Penal Law § 265.01. In this court’s view, a 2009 decision rendered by the Appellate Division, Third Department, is directly on point. In its decision, the Court stated that
“[w]e reject defendant’s contention that the statutes under which he was convicted violate the Second Amendment . . .
“Unlike the statute at issue in Heller, Penal Law *599 article 265 does not effect a complete ban on handguns and is, therefore, not a ‘severe restriction’ improperly infringing upon defendant’s Second Amendment rights. Moreover, in our view, New York’s licensing requirement remains an acceptable means of regulating the possessions of firearms (see People v Morrill, 101 AD2d 927 [1984]; People v Ferguson, 21 Misc 3d 1120 [A] . . . [Crim Ct, Queens County 2008]) and will not contravene Heller so long as it is not enforced in an arbitrary and capricious manner (see District of Columbia v Heller, 554 US at —, 128 S Ct at 2819).” (People v Perkins, 62 AD3d 1160, 1161 [3d Dept 2009].)
Defendant stated in his motion that the denials of New York City gun licenses “will be upheld unless they are ‘arbitrary and capricious.’ ” (Defendant’s mem of law.) Notably, defendant’s view is consistent with the standard of review held in both Heller and Perkins. Defendant’s assertion recognizes that judicial review of a New York City gun licensing denial has been in accordance with the authoritative precedence mandated by the courts. In Heller, the statutes at issue in the District of Columbia made it a crime to carry a firearm that was not registered and prohibited the registration of handguns (D.C. Code § 7-2501.01 [12]; § 7-2502.01 [a]; § 7-2502.02 [a] [4]). Additionally, “District of Columbia law also require [d] residents to keep their lawfully owned firearms, such as registered long guns, ‘unloaded and disassembled or bound by a trigger lock or similar device’ unless they are located in a place of business or are being used for lawful recreational activities.” (District of Columbia v Heller, 554 US at 574.) In Heller, the Court held that “the law totally bans handgun possession in the home.” (Id. at 628.) Applying the standard set forth in Heller, the Court held in McDonald “that the Second Amendment right is fully applicable to the States.” (McDonald v Chicago, 561 US at —, 130 S Ct at 3026.) In McDonald, the Court held a city ordinance unconstitutional that provided
“that ‘[n]o person shall . . . possess . . . any firearm unless such person is the holder of a valid registration certificate for such firearm.’ Chicago, 111., Municipal Code § 8-20-040 (a) (2009). The Code then prohibits registration of most handguns, thus effectively banning handgun possession by almost all private citizens who reside in the City. § 8-20-050 (c). Like Chicago, Oak Park makes it ‘unlawful for *600 any person to possess . . . any firearm,’ a term that includes ‘pistols, revolvers, guns and small arms . . . commonly known as handguns.’ Oak Park, 111., Municipal Code §§ 27-2-1 (2007), 27-1-1 (2009).” (561 US at —, 130 Sup Ct at 3026 [emphasis added].)
As the Court held in Perkins, this court now holds subsequent to the decision in McDonald, that New York’s licensing scheme for the regulation of firearm possession does not improperly infringe upon the Second Amendment of the United States Constitution. The People’s affirmation in opposition to motion to dismiss asserted that a significant percentage of premises license applications resulted in premises residence licenses in New York City. (People’s affirmation at 4 H 10.)* In turning to the holding in McDonald, the Perkins analysis is still applicable, that New York City has a rational statutory licensing scheme with meaningful and adequate court oversight. (People v Perkins, 62 AD3d 1160 [3d Dept 2009], supra.)
Here, defendant is particularly hard-pressed to challenge the rationality of New York’s premises residence license laws. Defendant apparently has not even attempted to obtain a license pursuant to the law. Unlike the statutes in both Heller and McDonald, New York City’s regulatory scheme is a far cry from being either a total ban of “handgun possession in the home” (District of Columbia v Heller, 554 US at 638) or an effective ban of “handgun possession by almost all private citizens who reside in the City.” (McDonald v Chicago, 561 US at —, 130 S Ct at 3026.)
Accordingly, for the reasons stated, this court holds that Penal Law § 265.01 is constitutionally sound. Defendant’s motion is denied in all respects.

 The People have affirmed that, in 2008, the Police Department received approximately 990 premises residence license applications and issued approximately 773 such licenses; in 2009, the Police Department received approximately 1,167 premises residence license applications and issued approximately 852 such licenses; and in 2010, as of June 30, the Police Department has received approximately 637 premises residence license applications and has issued approximately 351 such licenses.