OPINION OF THE COURT
Miriam R. Best, J.
Introduction
Defendant is charged with assault in the third degree (Penal Law § 120.00 [1]), harassment in the second degree (Penal Law § 240.26 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]) and unlawful possession of an air pistol (Administrative Code of City of NY § 10-131 [b]). The charges arise out of an incident that allegedly occurred at approximately 2:00 p.m. on June 26, 2010, inside an apartment on Walton Avenue in the Bronx. At that time, the People allege, defendant grabbed Jennifer Perez by her arm, pushed her against a wall and choked her, causing substantial pain to her arm and neck and a bruise to her arm. Thereafter, on July 29, 2010, at approximately 11:00 a.m., Police Officer Erik Carl allegedly observed that defendant possessed one black handgun and one air pistol inside of his bedroom closet. Defendant allegedly stated, in sum and substance:
“COPS FOUND IN CLOSET WHICH I HAD FOR PROTECTION NEVER SHOT IT. JUST FOR PROTECTION, BOUGHT IT FROM AN OLD HIGH SCHOOL FRIEND ON JANUARY 2010. I PAID ABOUT $800 ITS [sic] BLACK AND THERE ARE SOME BULLETS MAYBE 3 OR 4 IN CLOSET. THEY WERE NEVER LOADED I NEVER FIRED IT AS WELL.”
Defendant now moves to dismiss the weapons charge and the Administrative Code charge as facially unconstitutional and unconstitutional as applied.[1] He also moves for suppression and preclusion of evidence. For the reasons that follow, this court holds that neither Penal Law § 265.01 (1) nor Administrative Code § 10-131 (b) violates the Second Amendment and neither is unconstitutional as applied to defendant.
*954 Summary of the Constitutional Arguments
Relying on District of Columbia v Heller (554 US 570 [2008]) and McDonald v Chicago (561 US —, 130 S Ct 3020 [2010]), defendant argues that Penal Law § 265.01 (1) is an unconstitutional prohibition of his right to possess a firearm in his home for the purpose of self-defense. While he concedes both that the Supreme Court “certainly left open the right of states to regulate the sale, possession, and use of firearms” (Haidas brief at 3) and that Penal Law § 400.00 permits a person to obtain a license to possess a firearm (Haidas brief at 7, 8), he argues that the statute fails the strict scrutiny test that he argues must be applied to it. This is so, he claims, because the restrictions on gun ownership are overbroad, the state’s licensing scheme is arbitrary and capricious and it prevents indigent citizens from legally possessing firearms. He also argues that New York City’s ban on the possession of air pistols and air rifles is unconstitutional, because an air pistol is a firearm that “can be effective” for self-defense in the home and because air pistols could be characterized as “arms” as that term is defined by Second Amendment jurisprudence (Haidas brief at 14-15). In his reply brief, defendant also claims that air pistols were in common use at the time of the Framers and should be permitted by New York City specifically because some people might choose a less-lethal handgun for self-defense in the home. Finally, defendant claims that these statutes are unconstitutional as applied to him.
The People respond that defendant has not overcome his heavy burden of proving the laws’ invalidity beyond a reasonable doubt. They argue that Penal Law §§ 265.01 and 400.00 have already been found constitutional against Second Amendment challenges, and analyze why these decisions are correct and defendant’s arguments are incorrect. They also argue that air pistols are not firearms; therefore, Administrative Code § 10-131 (b) is valid when analyzed under either the rational basis or intermediate scrutiny test.
Finally, the court has permitted the City of New York to file a brief as amicus curiae. The City defends its policies and procedures for obtaining a firearms license. It also argues that its ban on the possession of air pistols is constitutional, both because air pistols are not firearms and because, even if they were, the City’s restrictions on them do not implicate the core Second Amendment right identified by the Supreme Court.
*955 Analysis
In Heller, the Supreme Court struck down District of Columbia statutes prohibiting the possession of handguns in the home and requiring lawfully-owned firearms to be kept inoperable. (554 US at 635.) Rejecting the argument that the right “to keep and bear arms” was connected with militia service (554 US at 595-619), the Court concluded that the Second Amendment codified an individual right to keep and bear arms for the core purpose of allowing law-abiding citizens to defend themselves, their families and their homes (554 US at 595, 628-630; see also McDonald, 561 US at —, 130 S Ct at 3044 [“our central holding in Heller: that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home”]).
Two years later, in McDonald, the Court held that the Second Amendment right to keep and bear arms for self-defense is fully applicable to the states through the Fourteenth Amendment. (561 US at —, 130 S Ct at 3050.)[2]
Significantly, the Supreme Court unequivocally stated in Heller that “the Second Amendment is not unlimited” (554 US at 626), that
“nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms” (id. at 626-627),
and that the Court was identifying “these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive” (id. at 627 n 26).[3] In “repeating those assurances” in McDonald, the plurality of the Court stated that, *956 “incorporation does not imperil every law regulating firearms” (561 US at —, 130 S Ct at 3047). Indeed, Federal District Courts have rejected challenges to the firearms licensing schemes that were adopted in the District of Columbia and Chicago following Heller and McDonald. (Heller v District of Columbia, 698 F Supp 2d 179 [D DC 2010] [.Heller II]; Ezell v City of Chicago, — F Supp 2d —, 2010 WL 3998104, 2010 US Dist LEXIS 108341 [ND 111 2010].)* **[4]
Penal Law §§ 265.01, 400.00[5]
Penal Law § 265.01 (1) states, in relevant part, that a “person is guilty of criminal possession of a weapon in the fourth degree *957 when: (1) [h]e or she possesses any firearm.” Exemptions to this rule are listed in Penal Law § 265.20, which provides, in relevant part in subdivision (a) (3), that section 265.01 shall not apply to “[possession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00 or 400.01 of this chapter.” Penal Law § 400.00 (2) (a) specifically provides for the issuance of a license “for a pistol or revolver, other than an assault weapon or a disguised gun,” for a householder to “have and possess in his dwelling.” The general statutory requirements for a license are that an applicant be 21 years of age or older, of good moral character, who has not been convicted of a crime or serious offense (as that term is defined in Penal Law § 265.00 [17]) or had a license revoked, who is not disqualified by reason of mental illness or the existence of an order of protection, and “concerning whom no good cause exists for the denial of the license.” (Penal Law § 400.00 [1] [g]; Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 400.00, at 66.)[6] Thus, any person to whom a license has been issued may lawfully possess a firearm in his or her home. Indeed, the City affirms that, “[i]n 2009, there were 1,141 new applications for premise residence licenses, and 826 of these applications were approved” (City’s amicus curiae brief at 3). (See also People v Foster, 30 Misc 3d 596, 600 n [2010] [“The People have affirmed that, in 2008, the Police Department received approximately 990 premises residence license applications and issued approximately 773 such licenses; in 2009, the Police Department received approximately 1,167 premises residence license applications and issued approximately 852 such licenses; and in 2010, as of June *958 30, the Police Department has received approximately 637 premises residence license applications and has issued approximately 351 such licenses”].)[7]
Accordingly, on their face, Penal Law § 265.01 (1) and § 400.00 are constitutional and do not run afoul of Heller. (People v Perkins, 62 AD3d 1160, 1161 [3d Dept 2009], lv denied 13 NY3d 748 [2009] [affirming defendant’s conviction for criminal possession of a weapon in the second and third degrees: “Penal Law article 265 does not effect a complete ban on handguns and is, therefore, not a ‘severe restriction’ improperly infringing upon defendant’s Second Amendment rights”]; People v Abdullah, 23 Misc 3d 232, 234 [Crim Ct, Kings County 2008] [“Because New York does not have a complete ban on the possession of handguns in the home . . . Heller is distinguishable and its holding does not invalidate New York’s gun possession laws or regulations”]; People v Ferguson, 21 Misc 3d 1120[A], 2008 NY Slip Op 52112[U], *4 [Crim Ct, Queens County 2008] [“the requirement that handguns be licensed in the State of New York is not tantamount to a total ban and, therefore, is not a ‘severe restriction’ as was the case in Heller”]; see also Mallard v Potenza, 376 Fed Appx 132, 134 [2d Cir 2010], cert denied 562 US —, 131 S Ct 664 [2010] [affirming partial summary judgment to New York City and other defendants and jury award to plaintiff of nominal damages; “Mallard had no legitimate possessory interest in firearms for which he held no license . . . Contrary to Mallard’s contention, no different result is compelled by . . . Heller . . . , which did not hold reasonable licensing requirements unconstitutional” (citations omitted)]; Justice v Town of Cicero, 577 F3d 768, 773-774 [7th Cir 2009], cert denied 560 US —, 130 S Ct 3410 [2010], reh denied 561 US —, 131 S Ct 46 [2010] [rejecting Second Amendment claim by business owner who was ticketed for possessing unregistered firearms; Cicero ordinance merely regulated, but did not prohibit, gun possession, and left law-abiding citizens free to possess guns]; United States v DeCastro, 2010 WL 1783550, *2, 2010 US Dist LEXIS 42324, *4 [SD NY 2010] [declining to reach defendant’s legal argument that he could not be prosecuted for violating 18 USC § 922 (a) (3), because his factual claim that New York’s restrictive licensing requirements are “tantamount to a ban” was undermined by New York City Police Department’s submission of statistics revealing that handgun licenses are *959 routinely issued in the eight different categories of handgun licenses available].)
Defendant argues that New York’s licensing requirements violate the Second Amendment for a number of reasons.[8] He claims overbreadth, because “there is no exemption [in Penal Law § 265.01 (1)] for maintaining a firearm in the home for the purpose of self-defense” (Haidas brief at 8) and because, under Penal Law § 400.00, those convicted of felonies or “serious offenses” cannot obtain licenses. He argues that the licensing scheme is arbitrary and capricious, because the “availability of a gun license is under the complete control and virtually unreviewable discretion of the New York City Police Commissioner” {id. at 9). He argues that requiring “all successful applicants to be of ‘good moral character’ is too vague to withstand any level of constitutional scrutiny” {id. at 10). Without actually acknowledging that decisions of the Commissioner are reviewable by the courts, defendant then argues that the review process is infirm because the “Appellate Divisions have never required the N.Y.PD. to present anything more than a rational basis for denying a gun license” {id. at 12). Finally, he claims that the licensing scheme unconstitutionally prevents indigent citizens from legally possessing firearms because of the cost of the nonrefundable application fee.
Defendant’s claim that there is no exemption in the statute for maintaining a firearm in the home for self-defense is simply wrong. Moreover, defendant never applied for a firearms license, as both the People and New York City point out and as defendant himself ultimately concedes (Wasserman brief at 3), and he has not established that it would have been futile for him to do so. Thus, his arguments challenging New York’s firearms licensing rules are speculative at best, because he cannot show that *960 any of the rules that he singles out would have prevented him from obtaining a firearms license had he actually applied for one. “A person to whom a statute properly applies can’t [sic] obtain relief based on arguments that a differently situated person might present.” (United States v Skoien, 614 F3d 638, 645 [2010], petition for cert filed Oct. 12, 2010 [citations omitted].) “A closely related principle is that constitutional rights are personal and may not be asserted vicariously.” (Broadrick v Oklahoma, 413 US 601, 610 [1973] [citations omitted]; see also People v Mojica, 62 AD3d 100, 110 [2d Dept 2009], lv denied 12 NY3d 856 [2009] [“the defendant may not assert a due process challenge contending that the statute is vague as applied to the conduct of others (see Broadrick v Oklahoma, 413 US 601, 608 [1973]; People v Shack, 86 NY2d 529, 538 [1995]; People v Nelson, 69 NY2d 302, 308 [1987])”].)
A few examples suffice. Defendant has no criminal record. Accordingly, the fact that a convicted felon cannot obtain a firearms license in New York would not have disqualified defendant had he applied. In any event, Heller clearly stated that “nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons” (554 US at 626), and federal law prohibits felons from possessing firearms (18 USC § 922 [g] [1]). Similarly unpersuasive is defendant’s claim that the licensing scheme is overly restrictive, because the statutory definition of “serious offense” in Penal Law § 265.00 (17), a conviction for which is disqualifying, includes “not only an arbitrary selection of misdemeanors but violations such as trespass, disorderly conduct and loitering” (Haidas brief at 8). Federal law already prohibits those convicted of a misdemeanor crime of domestic violence from possessing firearms (United States v Skoien, 614 F3d at 639-645; United States v White, 593 F3d 1199, 1205-1206 [2010]). Additionally, the requirement that firearms license applicants be of “good moral character” would appear to be one of long standing, as “most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm ‘unvirtuous citizens.’ ” (United States v Yancey, 621 F3d 681, 684-685 [2010] [citations omitted].)
Defendant’s claim that the availability of a firearms license is under the “complete control and virtually unreviewable discretion of the New York City Police Commissioner” (Haidas brief at 9) is wrong. The statute provides an unsuccessful applicant with an administrative appeal process, and that decision can be *961 challenged in court in a CPLR article 78 proceeding. As the People state, “If an applicant is unsatisfied with the judgment of Supreme Court, he/she is entitled, as of right, to appeal the final judgment of that court to the Appellate Division (CPLR 5701 [a]), whose order is appealable, by permission, to the Court of Appeals. CPLR 5602 (1) (a)” (People’s brief at 10). The court’s role in such an article 78 proceeding is to ensure that the administrative decision denying a petitioner a firearms license was neither arbitrary and capricious nor an abuse of discretion. (Matter of Goldstein v Brown, 189 AD2d 649, 650 [1st Dept 1993].) Finally, as the People correctly point out, the cases that defendant cites for his claim that “the police have a history of inserting their own requirements into the licensing regulations” (Haidas brief at 10), “all reversed administrative denials of firearms licenses where the officials ‘inserted their own requirements’ ” (People’s brief at 10-11). Clearly then, contrary to defendant’s claim, the discretion of a pistol licensing officer to deny an application “is not unfettered, and the officials involved — including the NYPD licensing division — are bound by standards reviewable in a court of law” (People’s brief at 11).[9]
Defendant cites no case for his proposition that New York’s firearms licensing scheme is unconstitutional because all applicants, even the indigent, must pay for the extensive background checks that are required before licenses are issued. Nor does he argue that the fees are unrelated to the costs of conducting the background checks. This case is simply unsuited to deciding the question of whether the application fees must be changed in light of Heller and McDonald, because defendant does not claim that the fees prevented him from applying for a license.[10]
Finally, defendant has not demonstrated that the firearms licensing regulations are unconstitutional under the intermediate scrutiny test, which “the majority of courts to have considered this issue” have held “is the most appropriate standard of review to apply to” firearms regulations. (Heller II, 698 *962 F Supp 2d at 188.) “A law survives intermediate scrutiny if it substantially related to an important governmental interest. Clark v. Jeter, 486 U.S. 456, 461.” (Heller II, 698 F Supp 2d at 186 n 7.) The People assert that the regulations “further the important goal of public safety” (People’s brief at 14). Promoting public safety is a “well-established goal” (Heller II, 698 F Supp 2d at 191; see also Schall v Martin, 467 US 253, 264 [1984] [“The ‘legitimate and compelling state interest’ in protecting the community from crime cannot be doubted” (citation omitted)]; Bach v Pataki, 408 F3d at 87 [New York has an “interest in monitoring gun licensees”]; 408 F3d at 91 [“(t)he State has a substantial and legitimate interest... in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument” (quoting Matter of Pelose, 53 AD2d 645, 645 [2d Dept 1976])]). As the Heller II court did, this court concludes that New York’s licensing scheme is substantially related to this important governmental interest.
Administrative Code of City of NY § 10-131 (b)
Defendant also argues that New York City’s ban on the possession of air pistols, Administrative Code § 10-131 (b), violates the Second Amendment. On this issue, the parties disagree sharply on what air pistols are and on what Heller means. The People and the City both argue that air pistols are not firearms, which were the focus of the analysis and holding in Heller.[11] Defendant argues that the Court’s focus in Heller was handguns. While he appears to concede in his reply brief that air pistols are not firearms, he claims that they are “arms” as well as handguns that simply work differently from hand-held firearms. Thus, he argues, air pistols are entitled to Second Amendment protection and the City’s outright ban is unconstitutional.
This court begins, as Heller did, with the meaning of the word “arms” and of the phrase “bear arms.” According to Heller, “[t]he 18th-century meaning [of ‘arms’] is no different from the meaning today. The 1773 edition of Samuel Johnson’s dictionary defined ‘arms’ as ‘weapons of offense, or armour of defense.’ Timothy Cunningham’s important 1771 legal dictio *963 nary defined ‘arms’ as ‘any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.’ ” (554 US at 581 [citations omitted].) As for the phrase “bear arms,” the Court adopted Justice Ginsburg’s definition in Muscarello v United States (524 US 125, 143 [1998]), which it said “accurately captured the natural meaning of ‘bear arms,’ ” that is, “ ‘wear, bear or carry . . . upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.’ ” (554 US at 584.)
With these meanings in mind, and based on the information provided by the parties about how air pistols operate and how air pistol manufacturers intend them to be used, and not used, this court must conclude that air pistols are not “arms.” The manufacturer of the air pistol that defendant is charged with possessing includes a disclaimer at the bottom of its Internet Web site page recognizing that air pistols are not firearms: “Do Not Brandish Or Display Your Airgun In Public. It May Confuse People And It May Be A Crime. Police And Others May Think An Airgun Is A Firearm” (People’s brief at 17, quoting Gamo Adult Precision Airguns, available at http:// www.gamousa.com/category.aspx?catID=2 [accessed Jan. 10, 2011]). The manufacturer’s Web site page also states that it designs air pistols and airgun ammunition “for small game hunting and pest control” and that its products are “used daily by hunters and outdoor enthusiasts” (People’s brief at 20, quoting Gamo Adult Precision Airguns, available at http:// www.gamousa.com [accessed Jan. 10, 2011]). In stark contrast, firearms manufacturers such as Smith and Wesson and the Italian company that makes the Beretta line of handguns “make it clear that their products are intended to be effective in self-defense scenarios” (People’s brief at 20; see e.g. http:// www.smith-wesson.com [featuring “The New Home Defense Kit” SD9 and SD40, also described as “Homeowner’s Insurance”] [accessed Jan. 12, 2011]).
Defendant does not dispute these facts. But while he concedes differences in both the operation and lethality of air pistols versus hand-held firearms — the former use air to propel a BB or pellet, while the latter use gunpowder to expel a bullet — he urges that air pistols fit squarely within Heller’s rationale:
“There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; *964 it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police.” (554 US at 629.)
Defendant claims that “[n]o thing in the foregoing passage suggests a limitation to hand-held weapons that employ gun powder rather than compressed air” (Wasserman brief at 4).
Defendant’s argument, however, overlooks crucial facts. The statutes at issue in both Heller (554 US at 574-575) and McDonald (561 US at —, 130 S Ct at 3026) banned possession and registration of firearms, and the Court in Heller emphasized that handguns are “an entire class of ‘arms’ that is overwhelmingly chosen by American society for that lawful purpose [of self-defense]” (554 US at 628). Thus, “banning from the home ‘the most preferred firearm in the nation to “keep” and use for protection of one’s home and family’ [Parker v District of Columbia,] 478 F.3d [370,] 400 [DC Cir 2007], would fail constitutional muster.” (554 US at 628-29; see also 554 US at 629 [“It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon”].)
Defendant cites no facts from anywhere in the United States outside New York City to establish that American citizens overwhelmingly chose air guns for “the core lawful purpose of self-defense” (554 US at 630), rather than for sports and recreation. Instead, he resorts to theory and speculation: the City’s police expert “is no authority on the psychological deterrent effect of an air gun when displayed as a defensive weapon”; “this inexpensive, easy to operate, and essentially non-lethal weapon has much to commend it as a household weapon for the average civilian”; “[t]he City should ponder whether its categorical opposition to these non-lethal weapons is creating an unnecessary conflict between the Second Amendment and the Sixth Commandment. Pacifists, too, have Second Amendment rights. The city should consider licensing airguns for the home” (Wasserman brief at 7).
Nor do defendant’s citations to the Journals of the Lewis and Clark Expedition of 1803-1806 to establish that air guns were “an integral part of the American arsenal at the time of the Framers” (Wasserman brief at 5) carry the day. All these histori *965 cal references illustrate is that Captain Merriwether Lewis used an air rifle “for hunting and to astonish” Native Americans (id. at 6). Conspicuously missing from the excerpts that defendant selected is any reference to the use of air guns in the early nineteenth century for self-defense.
Accordingly, this court holds that Administrative Code § 10-131 (b) does not implicate the Second Amendment right to keep and bear arms. As such, the statute is presumptively valid and need only pass the rational basis test to withstand constitutional scrutiny. The People and the City advance several reasons why the air pistol ban is rationally related to legitimate state interests: air pistols cause thousands of injuries per year in the United States; like imitation firearms, they could be mistaken for firearms by law enforcement officers; and some do not have serial numbers, which hampers criminal investigations when they are recovered during such investigations (People’s brief at 18; City’s amicus curiae brief at 12 n 10). These reasons suffice to justify the statute.
Defendant’s As-Applied Challenges
Defendant devotes just two paragraphs in support of his claims that Penal Law § 265.01 (1) and Administrative Code § 10-131 (b) are unconstitutional as applied to him. But his arguments derive exclusively from his claims that the statutes are facially unconstitutional and from the fact that he has no criminal record. In any event, both statutes give defendant clear notice of what is prohibited — namely, possession of an unlicensed firearm and possession of an air pistol — and explicit standards to the police for applying the statutes (People v Stuart, 100 NY2d at 422). Defendant has not established why the Penal Law and Administrative Code were unconstitutionally applied to him.
Conclusion Regarding Defendant’s Constitutional Claims
For these reasons, defendant’s motion to dismiss the counts charging violations of Penal Law § 265.01 (1) and Administrative Code § 10-131 (b) is denied in all respects.
Defendant’s Motion to Suppress or Preclude Evidence
Defendant’s motion for a Huntley/Mapp¡Dunaway¡Payton hearing is granted.
Defendant’s motion to preclude impeachment evidence (People v Sandoval, 34 NY2d 371 [1974]) and evidence-in-chief of prior *966 bad acts (People v Ventimiglia, 52 NY2d 350 [1981]) is referred to the trial court for hearings immediately prior to trial. The People are ordered to comply with their disclosure obligations pursuant to CPL 240.43 if they seek to introduce any such evidence.
Defendant requests a bill of particulars and discovery, as well as an order granting the same relief, or, in the alternative, preclusion of evidence. It appears from the People’s response and the court file that the People still have not responded to defendant’s bill and demand. Accordingly, defendant’s motion to compel discovery is granted to the extent that the People are ordered to respond to defendant’s bill and demand within seven days of the date of this order.
Defendant’s application for an extension of time to file additional motions is denied, subject to the provisions of CPL 255.20 (3) regarding due diligence and good cause.

. Pursuant to Executive Law § 71, defendant served a copy of his motion on the New York State Attorney General (Haidas brief at 17). By letter to the Clerk of this court dated September 9, 2010, the Attorney General declined to move to intervene pursuant to CPLR 1012 (b).

. The McDonald plurality held that the Second Amendment is incorporated through the Due Process Clause (561 US at —, 130 S Ct at 3030-3031), while Justice Thomas, concurring in part and concurring in the judgment, would hold that the Second Amendment right is a privilege of American citizenship that applies to the states through the Privileges and Immunities Clause. (561 US at —, 130 S Ct at 3058-3088.)

. See also 554 US at 595 (Second Amendment right is not unlimited; “we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose”)-, 554 US at 625 (“We therefore read [United States v] Miller[, 307 US 174 (1939),] to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled *956 shotguns. That accords with the historical understanding of the scope of the right”); 554 US at 632 (nothing in the Court’s analysis “suggestfs] the invalidity of laws regulating the storage of firearms to prevent accidents”).

. Also since McDonald, Federal Circuit Courts of Appeals have rejected Second Amendment challenges to federal laws that prohibit certain classes of people from lawfully owning firearms and that prohibit people from owning certain kinds of weapons. (United States v Yancey, 621 F3d 681 [7th Cir 2010, per curiam] [rejecting Second Amendment challenge to 18 USC § 922 (g) (3), which makes it a felony for one who is an unlawful user of, or addicted to, any controlled substance to possess a gun]; United States v Seay, 620 F3d 919 [8th Cir 2010], cert denied 562 US —, 131 S Ct 1027 [2011] [same]; see also 620 F3d at 924-925 [collecting cases]; United States v Skoien, 614 F3d 638 [7th Cir 2010, en banc], petition for cert filed Oct. 12, 2010 [rejecting Second Amendment challenge to 18 USC § 922 (g) (9), which makes it a felony for a person convicted of a misdemeanor crime of domestic violence to carry firearms in or affecting interstate commerce]; United States v Marzzarella, 614 F3d 85 [3d Cir 2010], cert denied 562 US —, 131 S Ct 958 [2011] [rejecting Second Amendment challenge to 18 USC § 922 (k), which makes it a felony to possess a firearm with an obliterated serial number]; see also id. at 90-91 n 5 [collecting cases]; United States v White, 593 F3d 1199 [11th Cir 2010] [holding that Heller does not cast doubt on constitutionality of 18 USC § 922 (g) (9)].) Because of the explosion of Second Amendment litigation post -Heller, and because cases analyzing Second Amendment challenges in various contexts are being decided with such frequency (see e.g. United States v Oppedisano, 2010 WL 4961663 48, 2010 US Dist LEXIS 127094 [ED NY, Nov. 30, 2010] [rejecting defendant’s motion to introduce otherwise irrelevant evidence to argue that 18 USC § 922 (g) (1), prohibiting possession of ammunition as a convicted felon, is unconstitutional as applied to him in light of Heller]; People v Foster, 30 Misc 3d 596 [Crim Ct, Kings County 2010]), this court does not attempt to set forth an exhaustive list of all federal and state cases raising challenges to such categorical bans.

. This court is aware that, generally, an as-applied constitutional challenge should be decided before addressing a facial challenge.
“Because facial challenges to statutes are generally disfavored and legislative enactments carry a strong presumption of constitutionality, a court’s task when presented with both a facial and as-applied argument is first to decide whether the assailed statute is impermissibly vague as applied to the defendant. If it is
*957 not and the statute provides the defendant with adequate notice and the police with clear criteria, that is the end of the matter.” (People v Stuart, 100 NY2d 412, 422 [2003] [citations omitted].)
Here, however, the court cannot proceed in the usual fashion, because defendant’s as-applied challenge is entirely circular: the Penal Law and Administrative Code are unconstitutional as applied to him because they are unconstitutional burdens on his Second Amendment rights. Moreover, facial challenges “outside of the First Amendment context” may be permissible “in the presence of a constitutionally-protected right” (Dickerson v Napolitano, 604 F3d 732, 744 [2d Cir 2010], discussing Chicago v Morales, 527 US 41 [1999]). Therefore, this court begins with the facial challenges to the statutes. (See People v Aboaf, 187 Misc 2d 173, 185 [Crim Ct, NY County 2001] [addressing defendants’ facial challenge to Penal Law § 240.35 (4) before as-applied challenge; each as-applied claim was “based on the premise that the bandanas the defendants were wearing are entitled to protection under the First Amendment”].)

. New York City’s premise residence licensing requirements “materially mirror those set forth in the Penal Law.” (City’s amicus curiae brief at 7.)

. The difference in the 2009 figures cited in the present case and in Foster is irrelevant to the court’s analysis.

. Citing Bach v Pataki (289 F Supp 2d 217, 224-226 [ND NY 2003], affd 408 F3d 75 [2d Cir 2005], cert denied 546 US 1174 [2006]), defendant argues that he has standing to challenge the licensing requirements “as a criminal defendant aggrieved by a prosecution that is founded upon a vague and unconstitutional licensing requirement . . . The general rule that requires civil plaintiffs to first submit to a challenged policy or licensing requirement is inapplicable to a criminal defendant charged with possessing an unlicensed gun” (Wasserman brief at 3). Unlike defendant, Bach could not obtain a New York firearms license because he neither lived nor worked in New York; thus, it would have been futile for him to have applied for a license (289 F Supp 2d at 223). The People repeatedly emphasize that defendant never applied for a firearms license or showed that it would have been futile for him to do so (People’s brief at 8, 11, 13, 16), but never argue that he lacks standing to raise these claims.

. Whether the rational basis test that is applied in article 78 proceedings must be changed in light of Heller and McDonald (see Haidas brief at 11-12; Matter of Broadus v City of N.Y. Police Dept. [License Div.], 62 AD3d 527 [1st Dept 2009]; Matter of Moreno v Cacace, 61 AD3d 977 [2d Dept 2009]) should be decided in the context of an appeal from a denial of a license, not here, where defendant never applied for a license and never resorted to an article 78 proceeding.

. Indeed, information in the court’s file indicates that defendant was employed at the time of his arrest.

. See especially People’s brief at 8 n 6 (“New York distinguishes between air guns and firearms. Penal Law § 265 does not mention air guns in its definition of firearms. Nor are air guns included in the Ad. Code § 10-301 [a], the section that regulates pistols and revolvers”).