OPINION OF THE COURT
Lucy Billings, J.
In each of these cases, which the court has consolidated for decision, the court is called upon to determine whether the City of New York may require permits for artists displaying and selling their art, books, or other written materials in or near a City park. This regulation of expressive activity requires an examination of the interplay among governing City statutes, the constitutional freedoms implicated, and prior Federal court decisions on similar issues.
In each of these cases the People have charged defendant artists with violating a New York City Department of Parks and Recreation (Department of Parks or Department) regulation, 56 RCNY 1-05 (b), which proscribes unlawful vending: “No person in any park, or street adjacent to or abutting a park (including all public sidewalks of such abutting streets) shall sell, offer for sale, hire, lease or let anything whatsoever, except under and within the terms of a permit, or except as otherwise provided by law.” Department of Parks and Recreation regulation (56 RCNY) 1-03 (b) (1), governing permits, provides further that: “When any provision of these Rules requires a permit as a condition to the performance of an act or activity, no such act or activity shall be implemented or commenced prior to the receipt of written authorization from the Commissioner or from his authorized representative.” New York City Charter § 533, governing the powers and duties of the Commissioner of the Department of Parks and Recreation, makes any violation of these regulations a misdemeanor triable by the criminal courts of New York City and punishable by up to 90 days in jail or a fine of up to $1,000. (NY City Charter § 533 [a] [9].)
*960 The accusatory instruments charging each of the defendants with violating 56 RCNY 1-05 (b) allege that they were selling their artwork or books or displaying these items for sale on Department of Parks’ property without a permit or authorization from the Department. In the cases of defendants Balmuth and Christiano, the location of the offense is 993 5th Avenue, at 81st Street, New York County, in front of the Metropolitan Museum of Art. In defendant Oh’s case, the location is 5th Avenue at 59th Street. New York City Charter § 533 (a) (5) gives the Commissioner of the Department of Parks the power and duty to “regulate the use of* * * all streets and avenues lying within any park * * * or within a distance of three hundred fifty feet from the outer boundaries thereof’.
Defendants have moved to dismiss the charges under 56 RCNY 1-05 (b) on the grounds that, on its face or as applied, the regulation is contrary to the Federal or NY Constitution, City statutes, or Federal court orders. For purposes of these motions, defendants do not dispute that they were selling their artwork or books or displaying these items for sale, without Department of Parks’ authorization, on Department of Parks’ property, in front of the Metropolitan Museum of Art or elsewhere within the Department’s regulatory authority. In any event, for purposes of the motions to dismiss, the court will accept the allegations of the accusatory instruments as true. (CPL 100.40 [1] [c]; 170.35 [1] [c].) For the reasons discussed below, the court grants the motions. The court concludes that no license, permit, or similar authorization requirement may be imposed on persons displaying or selling written materials, including artwork, in public spaces.
I. THE PLEADINGS
In support of their motions, defendants themselves affirmatively allege that they are artists or writers who display and sell their works on the west side of 5th Avenue, including in front of the Metropolitan Museum of Art. Although Patrick Christiano is charged with selling “books”, he characterizes his works as “illustrated poetry”, a combination of visual art and literature.
In the cases of Mitchell Balmuth and Patrick Christiano, the People have responded with an affirmation from an Assistant Counsel for the Department of Parks. In the case of Gilbert Oh, the People have not responded. In the Balmuth and Christiano cases, however, the People do not dispute these facts alleged by defendants. The People rely primarily on the decision *961 in Lederman v Giuliani (98 WL 186753 [SD NY, Apr. 17, 1998, McKenna, J.]), in which Mitchell Balmuth and other artists attempting to sell their art in front of the Metropolitan Museum of Art are plaintiffs.
There the court denied the plaintiffs’ motion for a preliminary injunction against the Mayor of the City of New York, the City, its Department of Parks and Recreation, and other City agencies and officials, to enjoin enforcement of 56 RCNY 1-05 (b) pending final disposition of that action. The Federal District Court determined that plaintiffs were not likely to succeed on the merits of their claim that the regulation’s enforcement violates the First Amendment to the United States Constitution.
The People, citing Lederman v Giuliani (supra), allege that enforcement of 56 RCNY 1-05 (b) against defendants is designed “ ‘to serve the government’s interest in preserving the essential character of the City’s parks and keeping the parks and perimeter sidewalks safe and free of congestion.’ ” (Affirmation of Anastasia Greenebaum, Esq., at 2, quoting Lederman v Giuliani, supra, at 9.) Ms. Greenebaum attributes the Department’s permit requirement specifically for sales of art in front of the Metropolitan Museum of Art to “impending construction at the Met, and * * * an effort to maintain a more orderly atmosphere in front of this landmark institution.” (Affirmation of Anastasia Greenebaum, Esq., at 3.)
II. THE COLLATERAL ESTOPPEL EFFECT OF THE FEDERAL COURT’S PRELIMINARY INJUNCTION DECISION
As a threshold matter, this court must determine the collateral estoppel effect of the recent decision in Lederman v Giuliani (supra), at least as to Mitchell Balmuth, who was a party there. Particularly in criminal cases, the courts are reluctant to extend collateral estoppel to any persons who were not actually parties in the prior litigation. (People v McGriff, 130 AD2d 141, 149 [1st Dept 1987].) For collateral estoppel to be applied in subsequent criminal cases, (a) the parties in the prior and subsequent cases must be identical, and (b) the party to be estopped from relitigating a claim must have had a full and fair opportunity in the prior case to litigate the precise issue involved in the subsequent case. (People v Goodman, 69 NY2d 32, 38 [1986]; People v Sailor, 65 NY2d 224, 228 [1985]; People v McGriff, 130 AD2d, supra, at 149-150.)
*962 A. The Parties in Lederman v Giuliani and in Mitchell Balmuth’s Case Here Are Sufficiently Identical for Collateral Estoppel to Apply
As stated, in Lederman v Giuliani (98 WL 186753 [SD NY, Apr. 17, 1998, McKenna, J.], supra), Mitchell Balmuth is a plaintiff, but neither of the other two defendants here is a party there. There the defendants are the Mayor of the City of New York, the City, its Department of Parks and Recreation, and other City agencies and officials, but not the People of the State of New York or any State officials or entities.
The rule that requires the parties to be identical for collateral estoppel to apply is not so ironclad as to preclude the doctrine’s application where the “parties are so closely related that they may be deemed as one.” (People v McGriff, 130 AD2d, supra, at 150; see also, People v Berkowitz, 50 NY2d 333, 344-345 [1980]; People ex rel. Dowdy v Smith, 48 NY2d 477, 482 [1979].) Similarly, the doctrine may apply where the parties’ identity is wholly irrelevant to the issue to which estoppel is to be applied. (People v McGriff, 130 AD2d, at 152.)
The fact that defendants Christiano and Oh are alleged to have been selling their works or displaying them for sale along 5th Avenue, on Department of Parks’ property, without authorization from the Department is not enough to identify them with Mitchell Balmuth and the other plaintiffs in Lederman v Giuliani (supra). As discussed below, the real, viable issue here is the legality of the challenged regulation as applied to defendants, not its facial validity. Therefore the court cannot ignore the possible disparities in proof, in availability of evidence, or in defenses that might be dependent on the unique facts of each application of the regulation to each defendant. These differences conceivably could impact on or alter a determination as to whether the regulation was applied properly to them. (People v McGriff, 130 AD2d, supra, at 151-152.)
As to Mitchell Balmuth, the party opposing him here, the People of the State of New York, is closely enough related to the party opposing him in Lederman v Giuliani (supra) that the court may consider the parties identical. (People v Berkowitz, 50 NY2d, supra, at 344-345; People ex rel. Dowdy v Smith, 48 NY2d, supra, at 482; People v McGriff, 130 AD2d, supra, at 150.) In both cases, the parties opposing Mr. Balmuth are the parties enforcing the regulation he challenges. The court cannot conceive of how any differences in the identity of these law enforcement bodies would affect a determination as to the *963 propriety of the regulation’s application in any relevant aspect. (People v McGriff, at 152.)
B. Mitchell Balmuth Has Not Had a Full Opportunity to Litigate All the Claims Involved in This Case, So Collateral Estoppel Does Not Apply
Assuming the parties in this case are sufficiently identical to the parties in Lederman (supra) for purposes of collateral estoppel as to Mitchell Balmuth, the decision there still does not bind the court here. The decision on the plaintiffs’ motion for a preliminary injunction, that they are not likely to succeed on the merits of their First Amendment claim, does not preclude this court’s plenary consideration of defendants’ motion to dismiss based on their First Amendment claim. New York law is well settled that the denial of a preliminary injunction is not an adjudication on the merits and therefore does not act as collateral estoppel in a subsequent case. (E.g., Preston Corp. v Fabrication Enters., 68 NY2d 397, 402 [1986]; Matter of Steck v Jorling, 182 AD2d 937, 939 [3d Dept 1992]; Tremco, Inc. v Turk, 170 AD2d 987 [4th Dept 1991]; Bauer v Planning Bd., 159 AD2d 532, 533 [2d Dept 1990]; Park E. Apts, v 233 E. 86th St. Corp., 139 Misc 2d 806, 809 [Civ Ct, NY County 1988], affd 143 Misc 2d 60 [App Term, 1st Dept 1989]; see also, Neuman v Pike, 456 F Supp 1192, 1205 [SD NY 1978].)
Even if not strictly binding on this court, the Federal court’s preliminary injunction decision is certainly persuasive authority on the regulation’s validity under the First Amendment, even in Gilbert Oh’s case, where the People have not opposed his motion to dismiss. That court did not, however, determine the regulation’s validity under the New York Constitution or any governing statutory authority.
III. THE GOVERNING STATUTES AND INTERPRETIVE AUTHORITY
A. The Statutory Exemptions From the Licensing Requirements
New York City statutes governing licensing of “general vendors” provide that: “it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.” (Administrative Code of City of NY § 20-453.) Whether or not the vending is licensed, however, the *964 statutes further provide for restrictions on vending and prohibitions against vending in specific areas. (Administrative Code § 20-465.) One of these specific restrictions is that: “No general vendor shall vend within the geographical areas under the jurisdiction of the department of parks and recreation unless written authorization therefor has been obtained from the commissioner of such department, but nothing therein contained shall exempt any general vendor from obtaining a license in accordance with this subchapter.” (Administrative Code § 20-465 |j],) Under this statute, vendors of items other than written matter, who have to obtain a license to sell their items in any public space in the City (Administrative Code §§ 20-452, 20-453), still must have that license to sell in areas within the Department of Parks and Recreation’s jurisdiction. Moreover, all vendors, whether licensed to sell elsewhere in the City or not, must obtain authorization from the Commissioner of the Department of Parks and Recreation to sell in areas within the Department’s jurisdiction.
Section 20-465 (j) is subject to a further exemption, however, for vendors of written matter: “General vendors who exclusively vend written matter are exempt from * * * subdivision j of section 20-465, except that nothing herein shall be construed to deprive the commissioner of the department of parks and recreation of the authority to regulate the vending of written matter in a manner consistent with the purpose of the parks and the declared legislative intent of this subchapter”. (Administrative Code § 20-473.) The issue before the court thus boils down to whether 56 RCNY 1-05 (b), as enforced against defendants, is “consistent with the purpose of the parks and the declared legislative intent” of Administrative Code, title 20, subchapter 27: the statutes governing licensing of general vendors, sections 20-452 through 20-474.3. (Administrative Code § 20-473.)
On its face, 56 RCNY 1-05 (b) does allow items to be sold or offered for sale on City parkland without a permit “as otherwise provided by law.” If Administrative Code § 20-473 must be construed to allow written matter to be sold or offered for sale on parkland without a permit, the regulation is facially consistent with that law. The issue, therefore, is specifically whether the regulation is lawful as enforced against defendants, in requiring them to have a permit to sell or offer for sale their artwork or books on City parkland along 5th Avenue.
*965 B. Artwork Is Written Matter Subject to the Statutory Exemptions
Bery v City of New York (97 F3d 689, 692 [2d Cir 1996]) construed Administrative Code § 20-465 (j) to provide an exception for written matter from the Department of Parks’ authorization requirement: “Vending, except for written matter, in a park is barred without written authorization from the Department of Parks and Recreation”. The Second Circuit found that, to the extent the First Amendment protects expressive materials, “sale of protected materials is also protected.” (Supra, at 695; see also, Lakewood v Plain Dealer Publ. Co., 486 US 750, 756, n 5, 768 [1988].) Further, the Second Circuit recognized that, because the “First Amendment shields more than * * * verbal expression” (Bery v City of New York, 97 F3d, at 694), the exception for sale of written matter also covered visual artwork. ‘Visual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection” (supra, at 695; see also, supra, at 696). As exemplified by defendant Christiano’s illustrated poetry, “written and visual expression do not always allow for neat separation: words may form part of a work of art, and images may convey messages and stories * * * Visual artwork is as much an embodiment of the artist’s expression as is a written text, and the two cannot always be readily distinguished.” (Supra, at 695.)
Thus, defendants here do not express themselves any less or lose any rights to free expression either because they express themselves through visual art or because they seek or receive payment for their artwork. (Riley v National Fedn., 487 US 781, 801 [1988].) Restricting their opportunity to receive payment for their exercise of rights to expression abridges those rights because, without the compensation, defendants may engage in less expressive activity. By diminishing their output, the restriction concomitantly burdens the public’s right to see what the artists otherwise would have produced. (United States v National Treasury Empls. Union, 513 US 454, 468-471 [1995].)
Moreover, as the court further recognized in Bery (supra), the very marketing in front of the Metropolitan Museum of Art or another landmark may convey part of the message of defendants’ works. Such a message might be their belief that art should be available to the public, their quest to communicate through the display and sale of their art to a public *966 with the resources to appreciate and purchase their works, or their struggle to make a living in the shadow of one of New York City’s landmark institutions, for example. (See, Bery v City of New York, 97 F3d, at 696.)
Lederman v Giuliani (1998 WL 186753 [SD NY, Apr. 17, 1998, McKenna, J.], supra) viewed Bery (supra) as construing the statutory licensing requirements and exemptions applied to vending written matter anywhere on City parkland, under Administrative Code § 20-465 (j), or even anywhere in the City, under Administrative Code § 20-453. Lederman found the Department of Parks’ permit system in front of the Metropolitan Museum of Art sufficiently narrower in time, place, and manner to survive the court’s scrutiny under the First Amendment. Once Bery construed the statutory licensing exemptions for written matter to apply to art vendors, however, enforcement of 56 RCNY 1-05 (b), which on its face does apply anywhere on City parkland, must comply with those statutory exemptions. Lederman did not address this issue.
C. The Standard for Reviewing 56 RCNY 1-05 (b) Under the Governing Statute
It is elementary that “ [a] dministrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute”. (Matter of Jones v Berman, 37 NY2d 42, 53 [1975]; see also, Matter of McNulty v New York State Tax Commn., 70 NY2d 788, 791 [1987]; Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480 [1978].) Although administrative agencies have discretion to carry out their legislative mandates, they have no discretion to ignore those mandates or to alter the substantive standards set by the Legislature. (State Div. of Human Rights v Genesee Hosp., 50 NY2d 113, 118 [1980]; Matter of Zalenski v Crucible Steel, 91 AD2d 807, 809 [3d Dept 1982].) An agency may not “by regulatory fiat” countermand a legislative enactment. (Servomation Corp. v State Tax Commn., 51 NY2d 608, 612 [1980]; Matter of SoHo Community Council v New York State Liq. Auth., 173 Misc 2d 632, 640 [Sup Ct, NY County 1997].)
In determining whether an agency regulation ignores, alters, or countermands a statute, a question dependent on accurate statutory reading, analysis, and apprehension of the legislative intent, “there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations”. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d *967 451, 459 [1980]; see also, Seittelman v Sabol, 91 NY2d 618, 625 [1998].) In such a case, the courts are “free to ascertain the proper interpretation from the statutory language and legislative intent”. (Matter of Gruber, 89 NY2d 225, 231-232 [1996]; see also, Seittelman v Sabol, 91 NY2d, at 625.) Whether agency action violates applicable statutes is within the court’s traditional competence to decide. (Supra; Matter of Dental Socy. v Carey, 61 NY2d 330, 335 [1984].) The court may not enforce an agency regulation, of course, if it contravenes a statutory provision. (Seittelman v Sabol, 91 NY2d, at 625; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d, at 459.)
IV. 56 rcny 1-05 (b) as enforced in defendants’ cases CONTRAVENES ADMINISTRATIVE CODE § 20-473 AS PROPERLY CONSTRUED
A. The Statutory Language and Intent
As set forth above, Administrative Code § 20-473 would allow enforcement of 56 RCNY 1-05 (b)’s permit system against defendants and other art vendors along 5th Avenue, if “consistent with the purpose of the parks and the declared legislative intent” of the general vending licensing statutes. (Administrative Code § 20-473.) New York City Charter § 533 (a) (3) gives the Commissioner of the Department of Parks the power and duty “to maintain the beauty and utility of the parks”. Beyond that general purpose, title 18 of the Administrative Code, governing the Department of Parks and Recreation, does not specify any further purpose of the City parks or the Department.
Enforcement of 56 RCNY 1-05 (b)’s permit system against vendors of written matter, including art, must not only be “consistent with the purpose of the parks”, however. (Administrative Code § 20-473.) The regulation must also be enforced consistent with “the declared legislative intent” of the general vending licensing statutes. (Ibid.) In enacting the statutory exemptions from licensing for vendors of written matter, the New York City Council declared: “it is consistent with the principles of free speech and freedom of the press to eliminate as many restrictions on the vending of written matter as is consistent with the public health, safety and welfare. The council further finds and declares that general vendors who exclusively vend written matter should be free from licensing requirements. It is further found and declared that general vendors who exclusively vend written matter with the aid of *968 small portable stands should be exempted from restrictions on the time, place and manner of their vending activity insofar as such exemption does not constitute a threat to the public health, safety or welfare.” (Local Laws, 1982, No. 33 of City of New York § 1.)
This declaration of legislative intent is enlightening in several ways. First, the only allowable purpose for which restrictions on vending written matter may be imposed are public health, safety, and welfare. In singling out the licensing requirement as a particular restriction to be eliminated, however, the legislative declaration conspicuously omits allowance for public health, safety, and welfare concerns. This provision contrasts with the final provision also singling out time, place, and manner restrictions on vendors of written matter who use portable stands. In the latter provision, the Legislature expressly repeated the allowance for public health, safety, and welfare.
The conclusion to be drawn from this expression of legislative intent is inescapable. Licensing is not a permissible restriction on vending of written matter under any circumstances. In analyzing the use of the terms “license”, “permit”, and “authorization”, in the pertinent law, moreover, the court does not discern any meaningful distinction in those terms. Therefore permits or authorization as used in 56 RCNY 1-05 (b) and 1-03 (b) to restrict vending of written matter is equally impermissible.
Other restrictions, as to time, place, and manner, for example, are permissible, consistent both with any other expressions of legislative intent and with the purpose of the parks. This construction of Administrative Code § 20-473 is logical and reasonable, as the City and its Department of Parks have available, under section 20-465, a wide array of permissible restrictions on vending generally and vending of written matter specifically, to address concerns of public health, safety, and welfare and to carry out the purpose of the parks.
The regulation in question here applies to vending of all sorts of goods, not just written matter. The People have not alleged why regulating vending of goods other than written matter and regulating vending of written matter other than by permits under Administrative Code § 20-465 would not serve the purpose of the parks or the Department of Parks Commissioner’s articulated purpose here, “to maintain a more orderly atmosphere” in front of the Metropolitan Museum of Art. (Affirmation of Anastasia Greenebaum, Esq., at 3.)
*969 B. The Statute’s Proper Construction Under the NY Constitution
In construing Administrative Code § 20-473, this court must be guided not only by the First Amendment principles laid down in Bevy (97 F3d 689, supra) and governing the court in Lederman v Giuliani (1998 WL 186753 [SD NY, Apr. 17, 1998, McKenna, J.], supra). This court must also look to the guarantees of free expression in the New York Constitution. The City Council’s declared legislative intent in eliminating the restrictions on vending written matter is based explicitly on “the principles of free speech and freedom of the press.” (Local Law No. 33, § 1.)
New York State’s guarantee of free expression is embodied in article I, § 8 of the NY Constitution: “Every citizen may freely speak, write and publish his sentiments on all subjects * * * and no law shall be passed to restrain or abridge the liberty of speech or of the press.” This language is more expansive than its Federal counterpart, the First Amendment to the Federal Constitution. The words “reflect the deliberate choice of the New York State Constitutional Convention not to follow the language of the First Amendment * * * but instead to set forth our basic democratic ideal of liberty of the press in strong affirmative terms”. (Immuno AG. v Moor-Jankowski, 77 NY2d 235, 249 [1991].) On that basis, the New York Court of Appeals has interpreted the State guarantee as more protective of free expression than the First Amendment, calling for particular vigilance in safeguarding freedom of expression against interference. (Matter of Children of Bedford v Petromelis, 77 NY2d 713, 731 [1991]; Immuno AG. v Moor-Jankowski, 77 NY2d, at 249.)
The broader protection afforded by the courts under the State constitutional guarantee of free expression also is based on the nature of that right. It is afforded greater protection than the minimum required under the Federal Constitution because local communities have distinctive attitudes toward free expression and the right is of particular local concern. (People v Alvarez, 70 NY2d 375, 379 [1987]; People v P. J. Video, 68 NY2d 296, 303 [1986].) The function of the State constitutional provisions that are parallel to the Federal Constitution, like the Free Expression Clause, if they are not to be redundant, is to supplement the Federal rights to meet the needs and expectations of the particular locality. (People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557 [1986].)
The United States Supreme Court itself has held that freedom of expression in the arts is an area governed by com *970 munity standards. (Miller v California, 413 US 15, 33 [1973]; People ex rel. Arcara v Cloud Books, 68 NY2d, supra, at 557.) New York City in particular has a long history and rich tradition of fostering freedom of expression in the arts and vindicating those rights. This community may support or at least tolerate freedom of expression in situations where other communities might not.
For all these reasons, the New York City Council’s declared legislative intent in eliminating the restrictions on vending written matter must be broadly construed, based explicitly as it is on the guarantee of free expression that is given broad scope. (Local Law No. 33, § 1.) In this light it is not too broad a reading of legislative intent to find impermissible one particular restriction on selling or offering for sale one category of goods.
V. defendants’ other claims
Defendants also have raised a claim under the equal protection guarantees of the Federal and NY Constitutions. Defendants claim that the Department of Parks has enforced its permit system against vendors of artwork, but not vendors of other written matter, or against vendors of written matter in front of the Metropolitan Museum, but not vendors of written matter elsewhere on City parkland. The People deny this selective enforcement. In view of the court’s conclusion that no licensing may be enforced against vendors of any written matter, including artwork, under Administrative Code § 20-473, the court need not reach this or any further constitutional issue.
VI. DISPOSITION
Based on the court’s conclusion that enforcement of 56 RCNY 1-05 (b) against vendors of artwork or other written matter is invalid under Administrative Code § 20-473, the court grants defendants’ motions to dismiss the charges for violating that regulation. In view of this disposition, the court need not determine the other motions by defendants Christiano and Oh.