OPINION OF THE COURT
Lucy Billings, J.
Petitioner, an attorney, seeks a judgment vacating respondents’ determination February 12, 2009, that revoked his handgun license; reinstating his license; and returning his firearms to him from the New York City Police Department’s License Division. (CPLR 7803 [3], [4].) Petitioner also seeks a declaratory judgment that Administrative Code of the City of New York § 10-312 and Rules of the City of New York (RCNY), title 38, § 5-22 (a) (13) are unconstitutional. (CPLR 3001.) Respondents move to dismiss the petition on the ground that the petition fails to state a claim. (CPLR 3211 [a] [7]; 7804 [f].)
I. Factual Allegations
On August 22, 2007, police officers responded to a complaint of domestic violence at petitioner’s residence in Staten Island, New York. Petitioner claims his wife was “attacking” his daughter, and, when he came to his daughter’s aid, his wife attacked him. (Verified petition 1i 4.) Both of petitioner’s children were in the home: his daughter, 16 years old, and his son, 12 years old. As a result of the complaint, the police arrested petitioner’s wife and charged her with assault in the third degree. (Penal Law § 120.00.)
While inside petitioner’s residence, the police officers found two guns in his closet that respondents claim were not *218 adequately safeguarded. Both guns were in an unlocked cabinet, one of them loaded. No evidence disclosed, however, that the guns themselves were not secured with a trigger lock or other safety locking device. Nor do respondents dispute that the guns remained in place during the altercation. According to petitioner, his wife purposely had unlocked the cabinet and informed the police of the guns’ whereabouts. Petitioner is the legal owner of both guns and has retained valid licenses for them since 1993. Based on what the police officers found, however, they issued petitioner an appearance ticket for the criminal offense of violating Administrative Code § 10-312, for “Failure to Properly Safeguard Weapon,” and took his weapons into their custody. (Verified petition 1Í 6; aff of Thomas M. Prasso, exhibit E.) The New York City Criminal Court dismissed this charge November 9, 2007.
Petitioner alleges that on August 23, 2007, he secured an order of protection for his children against their mother, which excluded her from their residence. On August 29, 2007, as acknowledged by respondents, he notified a civilian employee at the License Division about the incident a week earlier.
Petitioner subsequently received a notice dated September 13, 2007, from the License Division that his handgun license was suspended pending an investigation of the “domestic incident” August 22, 2007. (Id. exhibit G.) In particular, the notice advised him:
“that your license and/or permit are suspended as a result of your domestic incident.
“YOU ARE HEREBY DIRECTED TO IMMEDIATELY: . . .
“3. Forward a copy of the Property Clerk’s Invoice showing surrender of the firearms to the License Division at the above address.
“4. Forward a notarized letter to the License Division at the above address explaining the facts and circumstances surrounding your incident.
“5. Telephone and speak with the investigator named below who is assigned to your case. . . .
“The investigator assigned to your case is Police Officer COCCODRILLI....
“POSSESSION OF AN UNLICENSED FIREARM IS A CRIME. FAILURE TO COMPLY WITH ANY OF THE ABOVE-MENTIONED DIRECTIVES MAY RESULT IN YOUR AR *219 REST AND/OR PERMANENT REVOCATION OF YOUR LICENSE.” (Id.)
According to petitioner, when he received this notice, he telephoned the License Division and informed its investigator that the police had taken his firearms and licenses, but that he was never given an invoice for his firearms. Petitioner claims the investigator then informed petitioner that he did not need to take any further action at that time and was to wait for further communication from the License Division. Petitioner does not specifically recall the investigator’s identity, but claims she must have been Police Officer Coccodrilli, the name listed on the notice of September 13, 2007. The License Division, however, maintains that its records lack any indication of such a communication with petitioner after the one on August 29, 2007.
Having received no notarized letter from petitioner as directed by the September 2007 notice, the License Division mailed petitioner a “FINAL REQUEST” dated January 30, 2008, but otherwise identical to the September 2007 notice, again directing him immediately to forward a notarized letter to the License Division and to telephone Police Officer Coccodrilli. (Prasso aff, exhibit H; see verified petition 1Í11.) According to petitioner, on February 20, 2008, he mailed a notarized letter to the License Division setting forth the information he previously provided to the investigator via telephone. The License Division, however, maintains it never received this letter.
On January 30, 2008, the same date as the “FINAL REQUEST” suspension notice (Prasso aff, exhibit H), Officer Coccodrilli already issued a final report recommending revocation of petitioner’s license and relaying her investigative findings on which she based her recommendation:
“facts and circumstances surrounding the domestic incident
“the fact that licensee failed to comply with #4 & #5 on the suspension letter
“the fact that licensee did not properly secure his firearms and that the firearms were readily available for other persons living in the home to take.” (Id. exhibit I.)
Petitioner then received a notice of determination dated March 31, 2008, from the License Division’s Commanding Officer, concurring with Officer Coccodrilli’s findings and recommendation, and advising petitioner that the License Division had revoked his handgun license and that he was entitled to a hear *220 ing to challenge the determination. (Prasso aff, exhibit J; see verified petition lili 14-15.)
II. The Administrative Adjudication
Petitioner requested a hearing, which was held June 25, 2008. Officer Coccodrilli did not appear, as she was on an extended leave. Police Officer James Grillo testified for the License Division. He conceded his total lack of personal knowledge concerning the relevant facts.
After petitioner testified about mailing the notarized letter to the License Division February 20, 2008, but lacked a copy to produce at the hearing, the Hearing Officer kept the administrative record open to allow petitioner to present this documentary evidence demonstrating his compliance with direction No. 4 of the suspension letters. On July 3, 2008, petitioner presented an original stamped certificate of mailing as his evidence that he transmitted a letter to the License Division February 20, 2008. On July 17, 2008, petitioner mailed to the License Division a copy of the letter that he testified he had mailed in February 2008.
The Hearing Officer issued a determination dated February 10, 2009, again recommending revocation of petitioner’s “Premises-Residence handgun license.” (Prasso aff, exhibit O at 7.) Her report detailed the absence of any License Division record of a telephone communication between petitioner and the investigator or a notarized letter from petitioner, to comply with the suspension notices’ directives, as well as petitioner’s original noncompliance with requirements for safekeeping of a licensee’s firearms. In this latter regard petitioner violated, at minimum, the following requirements: (1) “to keep handguns away from unauthorized persons, especially children” and (2) to leave his handguns locked when out of his immediate control. (38 RCNY 5-22 [a] [13]; see Prasso aff, exhibit O at 3, 5; Administrative Code § 10-312 [a].) The Hearing Officer assessed these violations in the context of the undisputed facts that petitioner had custody of his two minor children and that their mother’s behavior had precipitated an active order of protection against her on behalf of petitioner and the children.
Regarding petitioner’s delay in notifying the License Division about the encounter with the police at his residence, the Hearing Officer referred to petitioner’s testimony that he notified the License Division as soon as possible, but that his first priority was securing the order of protection and taking care of his children. He explained that when the incident occurred he was *221 working seven days per week, at three jobs, as a practicing attorney, an administrative law judge, and a pharmacist, and that he did telephone the License Division a week after the incident. He insisted that a police officer also telephoned shortly afterward and informed petitioner his license “would be suspended until the order of protection ... is resolved” (Prasso aff, exhibit L at 27), and in each telephone communication with the License Division he explained that the police had taken his license and guns and given him no invoice, so he had “nothing to surrender.” (Id. at 28.) He further maintained that, after receiving the second notice, dated January 30, 2008, he did mail the specified notarized letter.
Based on petitioner’s testimony, the Hearing Officer found that
“[although the licensee testified that he had spoken to at least two, maybe three, individuals at the License Division, he was unable to provide the name of any of the people he spoke with or the dates. I find it surprising that an experienced lawyer and administrative law judge would not have obtained the name of any License Division employee with whom he spoke and noted the date. Despite his legal and adjudicative background, the licensee’s testimony in the within hearing was often unresponsive to the questions asked. The licensee’s claim that his wife, and not himself, was the instrument of making it appear to the police that his firearms were not properly safeguarded seems lame and self-serving, especially in view of the fact that in his testimony the licensee did not dispute or elaborate upon PAA [Police Administrative Aide] Perez’s account of what he reported on 8-29-07, i.e. that his firearms had been found not properly safeguarded.” (Id. exhibit O at 5.)
Based on her findings, the Hearing Officer concluded:
“In summary, the credible evidence adduced during the within hearing established that Mr. Tessler did not make the required immediate notification of the domestic incident and surrender of his firearms. He did not send the notarized letter of explanation as he was directed to do ‘immediately.’ He failed to safeguard his firearms. The appropriate penalty for these actions is revocation of his handgun license.” (Id. at 6; see verified petition IT 22.)
*222 The Director of the License Division adopted the Hearing Officer’s recommendation February 11, 2009, and issued a “FINAL AGENCY DETERMINATION” dated February 12, 2009, notifying petitioner that, as a result of the administrative hearing, his “Premises-Residence handgun license” had been revoked. (Verified petition, exhibit 1 at 1; Prasso aff, exhibit E)
III. Petitioner’s Claims in this Proceeding
As grounds to vacate respondents’ February 2009 final determination and return his handgun license and firearms, petitioner claims respondents violated their own procedures by issuing a final report the same day they sent him a final notice and violated Criminal Procedure Law § 160.50 by relying on the sealed records of a dismissed criminal action. (CPLR 7803 [3].) The determination to revoke his handgun license thus violated lawful procedures and was affected by legal errors, unsupported by substantial evidence, and thus arbitrary, as well as an abuse of discretion in applying the extreme penalty of revocation for the offense. (CPLR 7803 [3], [4].)
As further grounds for vacatur of respondents’ determination February 12, 2009, and for the return of his license and firearms, petitioner claims Administrative Code § 10-312 and 38 RCNY 5-22 (a) (13), on which respondents based the revocation, violate the Second Amendment to the United States Constitution and seeks a judgment declaring that statute and that rule unconstitutional. (CPLR 3001, 7803 [3]; 7806.) He maintains that these provisions prohibit operation of lawful firearms for immediate self-defense in a home. (District of Columbia v Heller, 554 US 570, 592 [2008].)
IV Respondents’ Motion to Dismiss Petitioner’s Claims
Respondents move to dismiss the proceeding on the ground that the petition fails to state a claim under CPLR 7803 (3) and (4) or the United States Constitution. (CPLR 3211 [a] [7]; 7804 [f].) Under CPLR 7803 (3) and (4), the court may not interfere in an administrative agency’s exercise of discretion unless its findings and determination are not rationally based or are arbitrary: “without sound basis in reason” or “without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; see Goodwin v Perales, 88 NY2d 383, 392 [1996]; Matter of Purdy v Kreisberg, 47 NY2d 354, 358 [1979]; Matter of Soho Alliance v New York State Liq. Auth., 32 AD3d 363 [1st Dept 2006].) If the agency’s action is without regard to the applicable law, then of course the action transgresses beyond the permissible exercise of discretion.
*223 The requirement that the decision under review be rationally based overlaps with the requirement that the decision be “supported by substantial evidence” (CPLR 7803 [4]), defined as “such relevant proof as a reasonable mind may accept as adequate to support a conclusion.” (Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]; Matter of Miller v DeBuono, 90 NY2d 783, 793 [1997]; People ex rel. Vega v Smith, 66 NY2d 130, 139 [1985]; see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y., 91 NY2d 413, 422 [1998]; Matter of S & R Lake Lounge v New York State Liq. Auth., 87 NY2d 206, 210 [1995]; Matter of Gray v Adduci, 73 NY2d 741, 743 [1988]; Matter of Verdell v Lincoln Amsterdam House, Inc., 27 AD3d 388, 391 [1st Dept 2006].) Application of the substantial evidence standard demands that “a given inference is reasonable and plausible.” (Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 499; Miller v DeBuono, 90 NY2d at 793.)
A. Petitioner’s Violation of Handgun License Rules
A licensee’s violation of any of respondents’ rules regulating handgun licenses may be grounds for revocation or suspension of his license. (38 RCNY 5-21.) Petitioner signed a sworn acknowledgment that he was required to comply with all laws applicable to his handgun license. (38 RCNY 5-33; Matter of Trimis v New York City Police Dept., 300 AD2d 162, 163 [1st Dept 2002]; see Matter of Ostrowski v City of New York, 55 AD3d 471, 472 [1st Dept 2008]; Matter of Cohen v Kelly, 30 AD3d 170 [1st Dept 2006].) Nevertheless, he violated multiple rules.
Beginning with 38 RCNY 5-30 (d), it requires that “whenever the holder of a handgun license becomes involved in a situation which comes to the attention of any police department, or other law enforcement agency, the licensee shall immediately notify the License Division’s Incident Section of the details.” The allegations in the petition and the undisputed documents in respondents’ administrative record show that, when the police entered petitioner’s home, charged petitioner and his wife with criminal offenses, and confiscated his firearms August 22, 2007, he did not immediately notify the License Division, but delayed until August 29, 2007, in violation of 38 RCNY 5-30 (d). (Trimis v New York City Police Dept., 300 AD2d at 162-163.)
Besides not immediately notifying the License Division about the incident August 22, 2007, petitioner undisputedly left his handguns in an unlocked container and accessible to other persons, including his children. This conduct violated 38 RCNY *224 5-01 (a), which required him to safeguard his handguns at his premises, and section 5-22 (a) (12), which prohibited him from leaving his handguns “where an unauthorized person may readily obtain them,” as well as the similar, more specific requirements of section 5-22 (a) (13) cited above. Despite the dismissal of the criminal charge that he violated Administrative Code § 10-312 (a)’s comparable mandates, and even if respondents were not permitted to rely on the records in the criminal action (CPL 160.50), nothing prohibited respondents from relying on their own record, including petitioner’s own testimony and other statements to respondents admitting the above facts. (Ostrowski v City of New York, 55 AD3d at 472; Matter of Zalmanov v Bratton, 240 AD2d 173, 174 [1st Dept 1997].) Although petitioner suggests that his wife unlocked the cabinet where his handguns were stored, those facts still demonstrate that his wife could unlock and access his firearms and thus equally establish that he failed to safeguard his firearms reasonably and adequately, in violation of each of the statutory and regulatory requirements cited above.
Petitioner also undisputedly received an appearance ticket, referred to as a “summons” (verified petition H 6; Prasso aff, exhibit C), for violating Administrative Code § 10-312. 38 RCNY 5-22 (c) (1), similarly to section 5-30 (d), specifically requires that a handgun licensee who receives a “summons other than traffic infraction” report it to the License Division’s Incident Section. Again, petitioner did not immediately report his receipt of the summons to the License Division, but delayed until August 29, 2007, in violation of 38 RCNY 5-22 (c) (1).
Petitioner readily admits that he secured an order of protection on August 23, 2007, for his children against their mother and then for himself against her. 38 RCNY 5-22 (c) (8) and 5-30 (c) (5), similarly to sections 5-22 (c) (1) and 5-30 (d), specifically require that holders of a handgun license who become the recipient of an order of protection immediately report it to the License Division’s Incident Section. Once again, petitioner did not immediately report his receipt of the orders of protection to the License Division, but delayed until August 29, 2007, in violation of 38 RCNY 5-30 (c) (5). (Ostrowski v City of New York, 55 AD3d at 472; Matter of Morstadt v Kelly, 45 AD3d 389 [1st Dept 2007]; Matter of Cohen v Kelly, 30 AD3d 170 [2006]; Trimis v New York City Police Dept., 300 AD2d at 162-163.)
Petitioner further admits receiving a notice dated September 13, 2007, from the License Division directing him “TO IM *225 MEDIATELY” forward to it an invoice showing surrender of his firearms; forward to it a notarized letter “explaining the facts and circumstances surrounding your incident”; and telephone and speak with Officer Coccodrilli, the investigator assigned to his case. (Prasso aff, exhibit G.) While petitioner insists he was never given an invoice for his firearms and did telephone and inform a License Division investigator that the police had taken his firearms and license, he admits he never sent the notarized letter as directed until February 20, 2008, over five months later, and 21 days after a second almost identical notice dated January 30, 2008.
Even accepting petitioner’s version of events and disregarding the Hearing Officer’s finding as to the credibility of petitioner’s claim that he contacted the assigned investigator immediately, petitioner still failed for over five months to comply with the License Division’s direction to forward the prescribed letter immediately. (Morstadt v Kelly, 45 AD3d at 389-390.) 38 RCNY 5-22 (a) (17) requires that handgun licensees “shall cooperate with all reasonable requests by the Police Department for information and assistance in matters relating to the license.” Petitioner neither claims nor demonstrates that respondents’ request for a sworn written statement explaining the incident involving his handguns in his home August 22, 2007, was unreasonable, yet he failed for over five months to cooperate with that request, in violation of section 5-22 (a) (17).
38 RCNY 5-30 (g) further provides that “[failure to comply with the License Division’s directions may result in the permanent revocation of the licensee’s handgun license.” Respondents’ determination to revoke petitioner’s handgun license was rationally and amply supported by the undisputed evidence of petitioner’s repeated noncompliance with respondents’ regulatory requirements. (38 RCNY 5-21; Ostrowski v City of New York, 55 AD3d at 472; Morstadt v Kelly, 45 AD3d at 389-390; Matter of Cohen v Kelly, 30 AD3d 170 [2006]; Matter of Papaioannou v Kelly, 14 AD3d 459, 460 [1st Dept 2005].)
B. Respondents’ Violation of Required Procedures
Petitioner contends that, when respondents sent him a final notice of January 30, 2008, to comply with their directions, on the same day, before petitioner received and might respond to that notice, respondents already determined to suspend and then to revoke his license, in violation of applicable procedures. On the day of the incident August 22, 2007,' however, petitioner *226 was required, based on his acknowledgment of the rules to which licensees must conform, to notify the License Division of the incident immediately. He waited seven days. The next day, August 23, 2007, when he received an order of protection, he likewise was required to report the order to the License Division immediately. He waited six days. On September 13, 2007, he was directed to forward to the License Division a specified notarized letter. He waited five months. Each of these prior instances of noncompliance with regulatory requirements already constituted a basis for suspending or revoking his license. (38 RCNY 5-21; Ostrowski v City of New York, 55 AD3d at 472; Morstadt v Kelly, 45 AD3d at 389-390; Matter of Cohen v Kelly, 30 AD3d 170 [2006]; Papaioannou v Kelly, 14 AD3d at 460.)
Moreover, while Officer Coccodrilli’s evaluation was dated January 30, 2008, the Commanding Officer did not adopt and endorse that evaluation until March 13, 2008, and did not mail it to petitioner until March 31, 2008. (Verified petition II 27; Prasso aff, exhibits I, J.) Thus petitioner still had two months after receiving the final notice to comply with it, before the supervising officer made and transmitted to petitioner the supervisor’s final determination. In fact, one of petitioner’s claims at his administrative hearing and in this proceeding is that in the intervening period, on February 20, 2008, he finally did comply with the notice’s direction to forward the notarized letter.
An administrative agency’s adoption of and adherence to its own operational practices attendant to statutes it administers are entitled to deference. (E.g. Matter of Denton v Perales, 72 NY2d 979, 981 [1988]; Matter of Rizzo v New York State Div. of Hous. & Community Renewal, 16 AD3d 72, 79 [1st Dept 2005], affd 6 NY3d 104 [2005]; Matter of Pavia v New York State Div. of Hous. & Community Renewal, 22 AD3d 393, 394 [1st Dept 2005]; Matter of Golden v Abate, 201 AD2d 256, 257 [1st Dept 1994]; see Matter of Willis v New York City Police Dept., 214 AD2d 428 [1st Dept 1995].) Petitioner nowhere demonstrates how respondents’ sequence of actions violated any required procedure, failed to provide him an opportunity to respond, or is not entitled to deference.
The Police Commissioner, by statute, has been delegated broad powers in the regulation of handgun licenses, including their revocation. (Matter of Minervini v Kelly, 22 AD3d 238, 239 [1st Dept 2005]; Matter of Perlov v Kelly, 21 AD3d 270 [1st Dept 2005]; Papaioannou v Kelly, 14 AD3d at 460; Trimis v New *227 York City Police Dept., 300 AD2d at 163.) Given petitioner’s undisputed violation of multiple rules governing the possession of handguns, coupled with the Police Commissioner’s broad discretion to revoke licenses to possess handguns when licensees violate those rules, respondents’ revocation of petitioner’s license was in accord with statutory and regulatory procedural requirements, rational, and supported by substantial evidence.
C. Respondents’ Reliance on an Erroneous Interpretation of the Applicable Law
The Hearing Officer’s recommendation February 11, 2009, which the Director of the License Division adopted as his “FINAL AGENCY DETERMINATION” February 12, 2009, revoking petitioner’s handgun license, relied on further conclusions, specifically that petitioner was: “required to store his firearms unloaded and secured by trigger lock, with ammunition stored separately, when the firearm is out of his immediate possession and control. (38 R.C.NY § 5-22 [a] [13]) See also Administrative Code § 10-312.” (Prasso aff, exhibit P at 5-6; see verified petition, exhibit 1.) Respondents thus considered the fact that at least one of petitioner’s handguns was loaded with ammunition, rather than being stored separately from the ammunition, in concluding further that petitioner “failed to safeguard his firearms.” (Prasso aff, exhibit P; see verified petition, exhibit 1.) In contrast, respondents never considered that his firearms may have been “secured by trigger lock,” even if stored in an unlocked container.
Although storing handguns separately from their ammunition surely would be a means of safeguarding the firearms as required by the separate rule simply to safeguard handguns in the home (38 RCNY 5-01 [a]), nothing in 38 RCNY 5-22 (a) (13) or even 5-22 (a) (12) or Administrative Code § 10-312 requires this specific safeguard. The single requirement to store handguns and their ammunition separately, not relied on by respondents, also is found in 38 RCNY 5-01 (a), but in a separate provision. Thus the rule first provides that “[t]he handgun shall be safeguarded at the specific address indicated on the license.” (38 RCNY 5-01 [a].) In separate sentences, the rule then provides that “[t]his license permits the transporting of an unloaded handgun directly to and from an authorized small arms range/shooting club, secured unloaded in a locked container. Ammunition shall be carried separately.” (Id. [emphases added].) Therefore, simply as a matter of regulatory *228 construction, the requirement to keep handguns unloaded and separate from their ammunition applies when they are being transported. The requirements not to leave handguns “where an unauthorized person may readily obtain them,” in 38 RCNY 5-22 (a) (12), and to keep them away from children and, when out of the licensee’s immediate control, leave them inoperable, specifically “by employing a safety locking device” rather than keeping ammunition separate, in section 5-22 (a) (13) and Administrative Code § 10-312 (a), apply when handguns are stored in the home.
Because respondents’ administrative decision relied on 38 RCNY 5-22 (a) (13) and Administrative Code § 10-312, not 38 RCNY 5-01 (a), in defending their decision, respondents may not now support it with grounds later considered, but not found in the original administrative record: a post hoc rationalization. (Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth., 88 NY2d 56, 75 [1996]; Matter of L&M Bus Corp. v New York City Dept. of Educ., 71 AD3d 127, 135 [1st Dept 2009]; Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal, 283 AD2d 284, 287-288 [1st Dept 2001]; Matter of 72A Realty Assoc. v New York City Envtl. Control Bd., 275 AD2d 284, 286 [1st Dept 2000].) Because the court’s review of respondent governmental agency’s decision, in turn, “is confined to the particular grounds invoked by the agency in support” (L&M Bus Corp. v New York City Dept. of Educ., 71 AD3d at 136), neither may the court look to 38 RCNY 5-01 (a) as support for respondents’ consideration of the fact that petitioner’s handgun was loaded with ammunition, rather than being stored separately from the ammunition. (See Timmerman v Board of Educ. of City School Dist. of City of N.Y., 50 AD3d 592, 593 [1st Dept 2008].) If “the grounds invoked by the agency . . . are inadequate or improper, the court is powerless to affirm the administrative action by substituting ... a more adequate or proper basis.” (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991] [emphasis added]; Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal, 283 AD2d at 288 [emphasis added]; see L&M Bus Corp. v New York City Dept. of Educ., 71 AD3d at 135-136; Timmerman v Board of Educ. of City School Dist. of City of N.Y., 50 AD3d at 593; 72A Realty Assoc. v New York City Envtl. Control Bd., 275 AD2d at 286.)
Even were the court to consider whether the rule to safeguard handguns in the home (38 RCNY 5-01 [a]) would support *229 consideration of petitioner’s loaded handgun and failure to store the ammunition separately, in construing this rule the court must be guided by the right of individuals under the Second Amendment to keep and bear arms for immediate self-defense in their home. In light of that federal constitutional right, and to avoid infringing on it, the court would not construe the requirement to safeguard handguns in the home more broadly than the rule’s specific terms. (38 RCNY 5-01 [a]; District of Columbia v Heller, 554 US at 592; see e.g. People v Balmuth, 178 Misc 2d 958, 969-970 [Crim Ct, NY County 1998].) Duly promulgated regulations and enacted legislation are presumed constitutional and therefore must be interpreted, as far as possible, to preserve their constitutionality. (People v Stuart, 100 NY2d 412, 422 [2003]; LaValle v Hayden, 98 NY2d 155, 161 [2002]; Matter of Travis S., 96 NY2d 818, 820 [2001]; Amazon.com, LLC v New York State Dept. of Taxation & Fin., 81 AD3d 183, 194 [1st Dept 2010].) While the rule to safeguard handguns in the home (38 RCNY 5-01 [a]) well might be applied more broadly to require keeping handguns unloaded and separate from their ammunition, companion rules narrowly specify when handguns must be kept unloaded and separate from their ammunition and thus preserve the constitutionality of section 5-01 (a) in its implementation. (Konigsberg v State Bar of Cal., 353 US 252, 264, 273-274 [1957]; Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d 796, 806 [Sup Ct, Bronx County 2008].)
Ample other grounds as detailed above support respondents’ determination, to be sure. Nevertheless, it is impossible to discern the extent to which their repeated reference to one of petitioner’s handguns being stored with ammunition and to his handguns being unlocked, when in fact they may have been secured, bore on the determination to revoke petitioner’s license. Therefore the court remands the proceeding to respondents to reconsider the penalty to be imposed in light of the court’s interpretation of the statute and rules cited by respondents and, given the length of time petitioner’s license already has been suspended or revoked, to consider modifying their penalty to a suspension covering September 2007 to the present. (E.g. Wolfe v Kelly, 79 AD3d 406, 411 [1st Dept 2010]; Matter of Rice v Hilton Cent. School Dist. Bd. of Educ., 245 AD2d 1104, 1106 [4th Dept 1997]; Matter of Benson v Board of Educ. of Washingtonville Cent. School Dist., 183 AD2d 996, 997 [3d Dept 1992]; see Sawtelle v Waddell & Reed, Inc., 21 AD3d *230 820, 821 [1st Dept 2005]; Matter of Hull Ave. Pharm. v Kaladjian, 226 AD2d 293, 294 [1st Dept 1996]; Matter of Johnson v Town of Arcade, 281 AD2d 894, 895 [4th Dept 2001].)
Respondents also are to consider petitioner’s current circumstances that may bear on whether he is fit to repossess his license. These circumstances include the fact that his daughter is no longer a minor; whether either of his children still resides with him; the frequency and volatility of his contact, if any, with his former wife; whether his unblemished disciplinary record as a licensed attorney since 1983 and licensed pharmacist since 1980, as well as a licensed handgun owner from 1993 to 2007, has continued. (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, 14 NY3d 119, 124 [2010]; Rob Tess Rest. Corp. v New York State Liq. Auth., 49 NY2d 874, 875 [1980]; Wong v McGrath-McKechnie, 271 AD2d 321, 322 [1st Dept 2000]; see Matter of Monessar v New York State Liq. Auth., 266 AD2d 123 [1st Dept 1999].) Thus respondents shall consider whether petitioner’s past noncompliance with respondents’ rules was the product of a unique convergence of particularly stressful family circumstances that is unlikely to recur. (Matter of Figuereo v Lipsman, 25 AD3d 699, 702 [2d Dept 2006]; see Matter of Stafford v Hernanadez, 52 AD3d 304, 305 [1st Dept 2008].)
D. The Constitutionality of the Challenged City Statute and Rule Regulating Handguns
Petitioner also seeks a declaration that Administrative Code § 10-312 and 38 RCNY 5-22 (a) (13) are unconstitutional, which would void all grounds supporting either a revocation or a suspension of his handgun licenses. McDonald v Chicago (561 US —, —, 130 S Ct 3020, 3026 [2010]) applied to the states the right of individuals to keep and bear arms under the Second Amendment to the United States Constitution, recognized in District of Columbia v Heller (554 US at 592). Unlike the local laws addressed in Heller and McDonald, however, the New York State and City statutes and regulations governing petitioner’s possession of a handgun are only licensing requirements, not an outright or effective ban on handguns or even a restriction severe enough to infringe on Second Amendment rights. (Penal Law § 400.00; Administrative Code § 10-131 [a] [1]; 38 RCNY 5-22, 5-30; McDonald v City of Chicago, 561 US at —, 130 S Ct at 3026; People v Hughes, 83 AD3d 960, 961 [2d Dept 2011]; People v Perkins, 62 AD3d 1160, 1161 [3d Dept 2009]; People v *231 Foster, 30 Misc 3d 596, 599-600 [Crim Ct, Kings County 2010].) These requirements bar only possession of unlicensed handguns. Reasonable licensing of and other regulatory restrictions on possession of handguns are constitutionally permissible. (District of Columbia v Heller, 554 US at 626-627; People v Perkins, 62 AD3d at 1161; People v Nivar, 30 Misc 3d 952, 957-958, 961-962 [Sup Ct, Bronx County 2011]; People v Foster, 30 Misc 3d at 599-600.)
Under the specific provisions of Administrative Code § 10-312 (a) and 38 RCNY 5-22 (a) (13) that petitioner challenges, however, it is a criminal offense for the lawful owner of a handgun: “to store or otherwise place or leave such weapon in such a manner or under circumstances that it is out of [the owner’s] immediate possession or control, without having rendered such weapon inoperable by employing a safety locking device.” Insofar as this provision would require that lawfully owned firearms be kept inoperable in the home at all times, the statute and rule would be unconstitutional under the Second Amendment. (District of Columbia v Heller, 554 US at 629-630.)
The statutory and regulatory terms on their face do not dictate, however, nor does the evidence in this record demonstrate, that handguns in the home be “kept inoperable at all times” (id. at 630), so “as to render them wholly useless” (id. at 629), and make “it impossible for citizens to use them for the core lawful purpose of self-defense” in the home. (Id. at 630.) Unlike the local laws addressed in Heller and McDonald, the New York City statute and regulation do not require a licensee to “keep any firearm in his possession unloaded and disassembled or bound by a trigger lock or similar device.” (Id. [emphasis added].) Instead, the New York City requirement to render a “weapon inoperable by employing a safety locking device” applies only when the weapon “is out of [the owner’s] immediate possession or control.” (Administrative Code § 10-312 [a]; 38 RCNY 5-22 [a] [13].)
It is the circumstances of storing, placing, or leaving the weapon out of the owner’s possession or control, if anything, that may prevent a handgun from being “readily accessible in any emergency.” (District of Columbia v Heller, 554 US at 629.) To keep handguns unlocked, readily accessible, and operable for immediate use, licensed handgun owners in New York City may keep their handguns in their possession or control.
Moreover, petitioner has failed to demonstrate that employing a safety locking device in fact prevented his handguns from be *232 ing readily accessible and operable for his immediate use, as opposed to other, unauthorized persons’ use. In contrast to a requirement to store handguns unloaded and separately from their ammunition, which well might inhibit their immediate use in an emergency, a locking device may have no such effect on immediate use to the handgun owner himself, who is familiar with the device’s unlocking mechanism. In any event, this record does not negate such a conclusion.
Petitioner’s constitutional challenge does focus more specifically on constitutionally vulnerable requirements than prior attacks on New York City’s overall handgun licensing scheme. Nevertheless, for the reasons explained above, the court denies his petition insofar as it seeks to invalidate Administrative Code § 10-312 and 38 RCNY 5-22 (a) (13) as unconstitutional.
V. Conclusion
The court grants respondents’ motion to dismiss and denies the petition insofar as it claims respondents’ determination, that petitioner violated their handgun license rules, failed to follow lawful procedures or was arbitrary, irrational, unsupported by substantial evidence, or based on an unconstitutional statute or regulation. (US Const Amend II; CPLR 3211 [a] [1], [7]; 7803 [3], [4]; 7804 [f].) Because respondents’ determination to revoke petitioner’s license was based in part on an erroneous interpretation of Administrative Code of the City of New York § 10-312 and 38 RCNY 5-22 (a) (13), however, the court remands this proceeding to respondents to redetermine the penalty for petitioner’s violations, unaffected by the erroneous application of these laws.
Because the court does not disturb respondents’ principal determination that petitioner violated their rules, warranting a penalty, and no party indicates any incompleteness in respondents’ administrative record already presented to support their motion, the court perceives no purpose in proceeding further in this forum with an answer to the petition. (See CPLR 409 [b]; 7804 [f]; 7806; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102-103 [1984]; Matter of Camacho v Kelly, 57 AD3d 297, 299 [1st Dept 2008].) If any party seeks to show such a purpose, that party may move, by an order to show cause, to restore this proceeding. Otherwise this decision constitutes this court’s judg *233 ment granting the petition to the limited extent set forth, denying the remainder of the petition, and dismissing the proceeding.